The Marine and Fire Insurance Bank of Georgia *vs.* Jauncey and Wood.

Where a draft was drawn by a consignor of cotton, upon the consignee thereof, on account of such consignment, and was discounted by a bank, upon the faith of representations made by the payee and the drawer that such draft was drawn against the consignment, and would be paid out of the proceeds thereof; which draft was accepted by the drawee, but before the cotton was received by him, he executed a general assignment of his property, for the benefit of his creditors, and his assignee claimed the cotton as a part of the assigned estate ; *Held* that the proceeds of the cotton, in the hands of such assignee, was a trust fund, applicable to the payment of the draft drawn against such proceeds.

An assignee claiming under a general assignment made by a failing debtor, for the benefit of creditors, is only entitled to the same rights and equities which the debtor would have possessed.

Where a principal debtor provides, in the hands of his surety, or of one standing in

The Marine and Fire Insurance Bank of Georgia *v.* Jauncey.

the situation of a surety, a fund to pay his debt, the creditor is entitled to have such fund applied in payment of that debt. And this even where the creditor had no knowledge of the existence of the fund, when he became such creditor.

Where a foreign corporation appears in court, it must establish its right to bring the suit, and to make the contract it seeks to enforce. But it is sufficient if this is shown upon the hearing of the cause. It is not necessary to set forth, in the pleadings, the authority upon which it relies to sustain its right to sue or enforce the contract.

In Equity. The bill in this cause stated, that in June, 1846, John Wood, then residing in Savannah, shipped and consigned to Joseph Wood, a commission merchant in New-York, 105 bales of cotton, for sale on commission, on his account; that the cotton was received in New-York on the 12th day of July; that on the 29th day of June, John Wood made his draft upon Joseph Wood, at 60 days sight, for $3000, payable to the order of Thomas T. Walsh; that the draft was drawn against the proceeds of the cotton, to be realized on a sale in New-York; that the draft was presented to the plaintiffs by the payee, for discount, on the day it was drawn; that Walsh and John Wood then represented that the draft had been drawn against the consignment of the cotton, and would be paid out of its proceeds. And upon the faith of such representation the plaintiffs discounted the draft; that it was accepted on the 6th of July, and when it became due, it was protested for non-payment; that before the cotton arrived at New-York, and on the 30th of June, Joseph Wood executed to the defendant Jauncey, a general assignment for the benefit of his creditors; that when the cotton arrived at New-York, Jauncey, by virtue of his assignment, took possession of it as a part of the assigned estate, and refused to account for it to the plaintiffs. That on the 30th of September, the plaintiffs gave notice to Jauncey of their claim upon the proceeds of the cotton, for the payment of the draft—and that he then had the cotton or its proceeds in his possession; that John Wood and Joseph Wood are both insolvent. The bill prayed that the proceeds of the cotton might be applied by Jauncey to the payment of the draft.

Jauncey and Joseph Wood demurred to the bill for want of equity. Also because Walsh was not made a party, and for the

further reason that the plaintiffs were a foreign corporation, and that it does not appear in the bill that they had authority by law to make discounts.

*G. N. Titus,* for the plaintiffs.

*H. H. Stuart,* for the defendants.

HARRIS, J.    At the time of the execution of the assignment, Joseph Wood had no interest in the cotton which could be conveyed by the assignment.    The cotton had not arrived.    The draft had not been accepted.    When he accepted the draft he acquired a lien upon the cotton for his indemnity, but this could give Jauncey no right to claim the cotton.    He then stood in the situation of a surety for John Wood, the principal debtor. The proceeds of the cotton, if received by him, would have constituted, in his hands, a trust fund applicable to the payment of the draft.    It is not denied, that as between him and John Wood, the party providing the fund for a specific object, such application could have been enforced.    It cannot be pretended that Jauncey acquired any greater interest, or better right to the cotton, than Joseph Wood would have had if no assignment had been made, or than he would have acquired if the draft had been accepted before the assignment.    It is well settled that an assignee claiming under a general assignment made by a failing debtor, for the benefit of creditors, is only entitled to the same rights and equities as the debtor himself would have possessed.    It seems to follow then that the proceeds of this cotton in the hands of Joseph Wood's assignee became a trust fund applicable to the payment of the draft drawn against such proceeds.

Again; it is well settled that where a principal debtor provides, in the hands of his surety, or one standing in the situation of a surety, a fund to pay his debts, the creditor is entitled to have such fund applied in payment of that debt.    (*Curtis* v. *Tyler,* 9 *Paige,* 434.    *Pratt* v. *Adams,* 7 *Id.* 626.)    And this too, even where the creditor had no knowledge of the exist-

The Marine and Fire Insurance Bank of Georgia *v.* Jauncey.

ence of the fund when he became such creditor.   In this case, then, the plaintiffs having, by the discount of the draft, become the creditors of John Wood, the principal debtor, they are entitled, as the holders of the draft, to the benefit of any fund provided by John Wood for its payment; whether in discounting the draft they relied upon the credit of the fund or not.   Jauncey having taken the place of Joseph Wood, so far as the fund is concerned, is bound to apply it to the purpose for which it was provided.

Nor can I think the other grounds of demurrer well taken. It does not appear that Walsh had been charged as endorser of the draft; and if he had not been, he had no possible interest in the subject matter of the suit.   But even if he were liable as endorser, I cannot see that he would have been a necessary or even a proper party to the suit.   As endorser he might have an equitable claim to have the property provided by the drawer of the draft applied to its payment.   If he has any interest at all, it is identical with that of the plaintiffs.   If he had been made a party, no decree could properly have been made against him.

It is undoubtedly true, that when a foreign corporation appears in court, it must establish its right to bring the suit and to make the contract it seeks to enforce.   But I understand that it is sufficient to show this upon the hearing of the cause, and that it is not necessary to set forth in the pleadings, the authority upon which it relies to sustain its right to sue or enforce the contract.   (*Bank of Michigan* v. *Williams*, 5 *Wend.* 478.)

The demurrer must be overruled with costs.   The defendants may have thirty days to pay the costs, and put in their answer. In case they do not elect to answer within that time, the bill is to be taken as confessed by them.