## Case No. 11,559.

### RANDOLPH et al. v. CANBY et al.

[11 N. B. R. 296.] [1]

Circuit Court, D. Delaware. 1875.

EQUITABLE ASSIGNMENT—PRESENTATION OF DRAFT —BANKRUPTCY.

The mere presentation to the drawee, of an ordinary negotiable draft or .commercial bill of exchange, drawn against a general balance in the hands of the drawee. which is less than the amount drawn for, without acceptance by the drawee, does not operate as an appropriation or equitable assignment of the funds in the hands of the drawee to the payee or holder, and does not create in his favor any lien thereon.

[Cited in Re Smith, Case No. 12,990; German Sav. Inst. v. Adae, 8 Fed. 108.]

In bankruptcy.

Samuel A. MacAllister, for Edmund D. Randolph & Co.

Charles B. Lore,. for National Bank of Wilmington and Brandywine.

Geo. H. Bates and Edward G. Bradford, Jr., for William Canby, assignee, etc.

BRADFORD, District Judge. On the 19th of September, 1873, there was a balance on the books of account of Edmund D. Ran-

1 [Reprinted by permission.]

20 FED. CAS.—17

dolph & Co., a banking firm residing and doing business in the city of New York, in favor of the firm of John McLear & Son, private bankers, residing and doing business in Wilmington, Delaware, of eight hundred and ninety-six dollars and fourteen cents. This balance would have been increased by the sum of four hundred and fifty dollars, had a sale theretofore negotiated of certain Pacific Mail stock, belonging to the said John McLear & Son, and in the hands of E. D. Randolph for sale, been consummated. This attempted sale failing by reason of the failure of the intended purchasers, a sale at a subsequent time and at a less price fixed the balance in favor of John McLear & Son, at the said sum of eight hundred and ninety-six dollars and fourteen cents. This fact is mentioned as indicating the probability that John McLear & Son, when the draft in question was subsequently drawn, supposed that there would be a balance in their favor more than adequate to meet the call for one thousand dollars—the amount of the draft. Under this state of facts, on the following day, September 20th, 1873, John McLear & Son presented to the National Bank of Wilmington and Brandywine, a draft or ordinary commercial bill of exchange, for the payment of one thousand dollars, drawn by the said John McLear & Son, upon E. D. Randolph & Co., in favor of the National Bank of Wilmington and Brandywine. This draft was discounted by the said bank, and the proceeds passed to the credit of John McLear & Son, who checked upon the same. On the same day, or shortly after, the said draft was presented in New York to E. D. Randolph & Co. for acceptance; but owing to a temporary embarrassment in the business of the last firm, the acceptance thereof was refused, and the draft was returned to the National Bank of Wilmington and Brandywine, in whose hands it has continued to this date. On the 14th day of November, 1873, John McLear & Son were duly adjudicated bankrupts in the United States district court for this district, and afterwards William Canby was appointed and duly qualified as assignee of said bankrupts. E. D. Randolph & Co., having recovered from their temporary embarrassments, resumed business, and are ready and willing to pay the said sum of eight hundred and ninety-six dollars and fourteen cents, with interest on the same; and have filed this bill of interpleader to cause the assignee of the said bankrupts, and the National Bank of Wilmington and Brandywine, the defendants therein named, to make good their respective claims to this fund. The assignee has filed an answer, claiming the fund as belonging to the estate of said bankrupts. The bank has failed to appear or to file any answer after due notice served, but in open court by their counsel have agreed that the bill, as to the facts therein alleged, should be taken pro confesso as against them.

There is one, and only one, legal question presented; which is, did the presentation of the draft or bill of exchange to E. D. Randolph & Co., the acceptance of which was then and there refused, operate as an appropriation of the funds in their hands to the National Bank of Wilmington and Brandywine, to which a court of equity will give effect as an equitable assignment, passing a right of property from the firm of John McLear & Son, to the bank? If it did pass such right of property, the bank is entitled to the fund; if it did not, then the assignee is so entitled, for he stands in the place of John McLear & Son, and is remitted to all their rights of property at the time they were adjudicated bankrupts. It is to be observed that the paper in question is a draft or ordinary commercial bill of exchange for a 'sum certain, drawn by one banking firm on another, upon a general balance in the hands of the debtor firm, and that, while the actual balance was less than the amount drawn for, there is reason to believe the creditor firm thought there was more than enough to pay the draft, as, in fact, there would have been, had not a favorable sale of stock been defeated by the failure of the purchaser, and a less favorable sale thereof been substituted therefor. The current of authorities establishes the proposition, that the presentation of such a bill of exchange as above described to the drawee for acceptance, does not per se operate as an appropriation or assignment, in law or equity, of the funds in his hands for the benefit of the payee, and consequently passes to the payee no title to such funds, and imposes no duty on the drawee to pay the same to the payee. There is no privity of contract between the holder or payee and the drawee until acceptance; and the drawee cannot be liable as acceptor until he has accepted the bill. I have not been able to find a case where an ordinary commercial draft or bill of exchange drawn against a general fund, without any evidence to show that the drawer intended to set aside the precise amount of the fund in the drawee's hands for the benefit of the payee, has been construed and held to operate as an equitable assignment in favor of the payee, on the mere presentation of the draft or bill of exchange to the drawee. On the contrary, the law is laid down by elementary writers and supported by authorities, that the mere presentation to the drawee of an ordinary commercial draft against a general fund, will transfer no right of property to the party in whose favor it is drawn; will not operate as an equitable assignment of the fund; and will not create a lien upon the fund in the hands of the drawee.

The principle of the common law, that no creditor shall be permitted to substitute any other person in his place as creditor of the debtor, without the assent of the latter, applies. This principle has been somewhat broken in upon, where the creditor has given an order on his debtor for the transfer of certain property, or the whole of a certain specific sum in his hands, or of a particular fund, and, in some cases, of a part of a particular fund. This request, contained in such a draft, brought home by notice to the drawee, the courts have treated as an equitable assignment of the property, or the precise sum of money or particular fund, if it was intended that all the money or fund in the hands of the drawee was to be removed, or as an assignment of part of a particular fund, according to some cases which treat a draft on a part of a particular fund as an assignment pro tanto. But, as before stated, there is no case of a negotiable draft, or bill of exchange, against a general balance, where such a result has followed from the mere presentation of such draft or bill. Mr. Parsons, in his work on Notes and Bills (volume 1, p. 230), says: "But there seems to be no principle of law by which the holder of a negotiable bill of exchange, when nothing has occurred which can be construed either as an acceptance or a binding agreement to accept, can demand acceptance, and in case of refusal sue the drawee. Nor would the usage of trade or custom be sufficient to give the holder the right to sue, even though the drawee have funds in his hands, and ought in honor to accept. His refusal so to do, although without reason and inconsistent with the principles of fair and honest dealing, does not form any good ground for the commencement of legal proceedings on that account." Again, he says: "There may be some dicta to the effect that a bill of exchange is an assignment; but no case that we are aware of, with the exception of one, has held this doctrine in an unqualified way, and that case must be considered as overruled. The doctrine is well settled, that before acceptance, a negotiable bill for a part of the funds is no assignment, but becomes one on the drawee's signifying his assent by accepting the bill."

There are authorities in England and the United States to the point, that the presentation of a draft, or order, or bill of exchange to the drawee for the payment of the whole of a particular fund, and, in some cases, of the part of a particular fund, so expressed on the face of the draft, order, or bill, will operate as an equitable assignment or appropriation of the fund, or the part thereof, and bind the drawee so that he shall be held responsible to the holder or payee, if he part with the fund to another person. Row v. Dawson, 1 Ves. Sr. 332; Yeates v. Groves, 1 Ves. Jr. 280; Watson v. Duke of Wellington, 1 Russ. & M. 602; Lett v. Morris, 4 Sim. 607; Mandeville v. Welsh, 5 Wheat. [18 U. S.] 286; Bradley v. Root, 5 Paige, 632; Marine Bank v. Jauncey, 1 Barb. 486; Gibson v. Cooke, 20 Pick. 15; Crocker v. Whitney, 10 Mass. 318; Cutts v. Perkins, 12 Mass. 209. These are nearly, if not quite, all cases of non-negotiable bills of exchange. "A proper bill of exchange," says Hurlbut, J., "does not of itself

operate as an assignment to the payee of funds of the drawer in the hands of the drawee, and even after an unconditional acceptance it cannot in strictness be held to have that effect, since the drawee becomes bound by reason of the contract of acceptance, irrespective of the funds in his hands. He may refuse when he ought to accept, by reason of his having funds, and yet neither he, or the funds, would in any way be bound or affected by the bill." Cowperthwaite v. Sheffield, 3 Comst. [3 N. Y.] 243. In the same case Vanderpoel, J., says: "If these bills had been in the form of orders for the entire proceeds of the shipment, they might, after notice to the drawee, have operated as an assignment of such proceeds. But then they would not have possessed all the characteristics of bills of exchange. If in such form they could be negotiated, they would on their face convey information to every holder of the fund on which they were drawn, and which they carried with them." In Harris v. Clark, Id. 93, 115, Ruggles, J., says: "The research of the counsel for the plaintiff has not enabled me to find a case where it has been held that upon a negotiable bill of exchange, the drawee has been made liable in equity to the holder without his acceptance or assent."

Orders or drafts for the payment of the whole of a particular fund are not properly negotiable bills of exchange. The certainty of payment is the great principle upon which the negotiability of such paper depends; and that will not permit any conditions or qualifications to affect the absolute personal liability of the drawee so soon as the bill is accepted. The following cases support the proposition that a negotiable bill of exchange on a general fund has not been treated as an appropriation of or equitable assignment of the fund to the payee or holder, by reason of its mere presentation to the drawee. Watson v. Duke of Wellington, 1 Russ. & M. 602; Mandeville v. Welsh, 5 Wheat. [18 U. S.] 277. In the latter case Story, J., says: "But when the order is drawn on a general or a particular fund for a part only, it does not amount to an assignment of that part or give a lien as against the drawee, unless he consents to the appropriation by the acceptance of the draft, or an obligation to accept may be fairly implied from the custom of trade, or the course of business between the parties, as a part of their contract." Cowperthwaite v. Sheffield, 3 Comst. [3 N. Y.] 243; New York & Virginia State Bank v. Gibson, 5 Duer, 574; Gibson v. Cooke, 20 Pick. 15; Phillips v. Stagg, 2 Edw. Ch. 108; Harrison v. Williamson, Id. 430; Winter v. Drury, 1 Seld. [5 N. Y.] 525.

The last case is especially noticeable because it is precisely parallel to the one under consideration. On January 31st, 1846, the plaintiff, Winter, by his agent, at half-past nine or ten o'clock in the morning, at New York, purchased of one Clarke a draft drawn by him on F. B. & Co. for four hundred dollars, payable at sight, and paid him the amount of it, less the usual exchange of one quarter of one per centum. The agent on the same day forwarded the draft to the plaintiff's agents at Philadelphia for collection. At one o'clock in the afternoon of the same day, Clarke made a general assignment of all his property to the defendant, Drury, in trust for the payment of his debts, and shortly after sailed for Europe. At the time of drawing the draft, Clarke had in the hands of F. B. & Co. two hundred and fifty dollars. The draft was presented, but not accepted; because the drawees had not sufficient funds to pay it. The draft was protested for non-payment, and notice sent to the drawer and indorser. Afterwards F. B. & Co. forwarded a check for two hundred and fifty dollars to Clarke, at Philadelphia. The check was received by the assignee, who indorsed it as the assignee of Clarke, got the money, and carried it to the credit of the assigned estate. At the time of the assignment Drury did not know of the existence of the four hundred dollar draft, nor of the funds in the hands of F. B. & Co. Neither was mentioned in the assignment. A few days after the receipt of the check by Drury, the plaintiff, Winter, gave him notice of his claim by virtue of the draft, and demanded the two hundred and fifty dollars received by Drury. Drury declined paying the money to the plaintiff, and this suit was commenced for its recovery. This case was decided in 1851, in the court of errors and appeals in New York. It is to be observed that the transaction was like the case now before this court, in these two respects:—First, the draft was a negotiable draft against a general fund; second, the balance drawn for was greater than the one actually in the hands of the drawee. In that case Gardiner, J., said: "The draft in question was an ordinary bill of exchange, payable generally and absolutely. In Harris v. Clarke, 3 Comst. [3 N. Y.] 118, it was said that a bill of exchange does not of itself give to the holder either in law or equity a lien upon the funds of the creditor in the hands of the debtor, until the acceptance of the latter. And in the still stronger case [Cowperthwaite v. Sheffield] Id. 243, of a draft drawn simultaneously with a consignment of cotton to a house in Scotland, the same doctrine was re-affirmed by this court. There is nothing in the case to distinguish it in principle from those cited. The bill was not in terms drawn upon a particular fund. * * * If the holder, by the receipt of the bill of exchange for value, acquired, neither at law or in equity, a lien upon the balance due to Clarke and then remaining with the drawees, the drawer had the right to dispose of it at his pleasure."

From these and many more cases that might be cited, the court thinks the principle fully established that the mere presentation of an ordinary commercial bill of exchange to a drawee, without acceptance by the lat-

ter, does not operate as an appropriation or equitable assignment of the amount drawn for, in favor of the payee or holder, and creates no lien in his favor as against such moneys, or any part thereof, in the hands of the drawee and shall decree accordingly.