PEASE, Appellant, vs. LANDAUER, Receiver, etc., and another, Respondents.

*March 11 — March 31, 1885.*

*Bank check — Equitable assignment — Stopping payment.*

As between the drawer of a check and the holder thereof for value, the former having a deposit in the bank sufficient to pay the same, there is an equitable assignment of such fund to the amount of the check, and the drawer cannot arbitrarily stop its payment.

APPEAL from the County Court of *Milwaukee* County.

The appeal is from an order made upon the hearing of an intervening petition filed by the appellant, *Joseph M. Pease,* in an action between E. D. Davis and Ezra Michelbacker for the dissolution of a partnership, etc. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The facts out of which the contention between the parties to this appeal arises, are briefly as follows: On and before July 30, 1884, E. D. Davis and Ezra Michelbacker were parties doing business in the city of Milwaukee, state of Wisconsin, under the firm name of E. D. Davis & Co. On that day the said firm was indebted to the appellant,

*Joseph M. Pease*, in the sum of $574.23, and that upon the adjustment and settlement of such debt the said firm gave to the said *Pease* their check upon the Merchants' Exchange Bank at Milwaukee for that sum. The following is a copy of such check:

" $574.23. MILWAUKEE, July 30, 1884.

"*Merchants' Exchange Bank:* Pay to the order of Jos. M. Pease, five hundred and seventy-four and 23-100 dollars, with exchange.

"(No. 369.) E. D. DAVIS & Co."

*Mr. Pease* was a resident of the city of New York, and the business was transacted by mail. On the day the check was drawn it was forwarded by E. D. Davis & Co., by mail, to *Mr. Pease*, in New York, and was received by him before the 4th of August, and by him immediately forwarded to Milwaukee and presented for payment at the bank on the 7th of August, and payment was refused. *On the 4th day of August, E. D. Davis & Co. entered on their books of account the transaction, charging J. M. Pease with $574.23, the amount of said check, and on the same day credited the same amount to the Merchants' Exchange Bank in the regular cash-book.* Such entries were made by Davis & Co. upon the supposition that the check had been presented and paid by the bank, and in ignorance of the fact that it had not been presented or paid.

At the time the check was drawn, on the day when the same was presented for payment, and down to the time of the presentation for payment, and down to the time of the presentation of the petition of *Pease* in this matter, the hearing of such petition, and the making of the order by the county court, from which this appeal is taken, the firm of E. D. Davis & Co. had a deposit account in said bank, upon which there was due to said firm a sum exceeding the amount of said check, and against which no other checks had been drawn or presented for payment.

On the 5th day of August, and before the check was presented for payment, an action was commenced by E. D. Davis against Ezra Michelbacker, in the county court of Milwaukee county, to dissolve the partnership of E. D. Davis & Co. and close up the business of the firm, and on the same day *Max Landauer* was appointed by said court receiver of the assets of said firm, and he duly qualified as such receiver. It also appears that before the check was presented for payment, *the Merchants' Exchange Bank had notice of the appointment of the receiver in such action, and the receipt of such notice is alleged as the reason for refusing payment of the check on presentation.* The bank also alleges that it still holds the money due to said firm, subject to the determination by the court of the rights of all concerned. The bank also alleges, upon information and belief, that on the 10th of September, 1884, *Joseph M. Pease* made an assignment for the benefit of creditors, under the laws of the state of New York, to one Alexander E. Orr, of the city of New York, who claims as such assignee to be the owner of the money due upon the check. This allegation is denied, upon information and belief, by the attorney now acting for the appellant.

It also appears that the Mechanics' National Bank of the city of New York commenced an action in the county court of Milwaukee county against *Joseph M. Pease*, and that process of garnishment was issued in said action, which garnishee process was duly served upon said Merchants' Exchange Bank, summoning it as garnishee of *Joseph M. Pease*, claiming that said bank had in its possession property of the said *Pease;* by which garnishee process the said Mechanics' National Bank of the city of New York seeks to reach the amount of said bank account standing to the credit of E. D. Davis & Co. at the time of the appointment of the receiver, so much as is represented by the check held by *Pease.* The Merchants' Exchange Bank al-

leges that it has no interest in the controversy in regard to the money in said bank, represented by the check drawn in favor of *Pease*, except to pay it to the person lawfully entitled thereto, and asks the court to make Alexander E. Orr and the Mechanics' National Bank of New York parties to this proceeding before any final order is made in the action.   The court, on the 20th of September, 1884, so ordered, and directed that a copy of the order be mailed to Alexander E. Orr, before the 4th of October, 1884; and the hearing of the petition and order to show cause was fixed for the 29th day of November, 1884.   There was no evidence before the court of the fact of any assignment having been made by *Joseph M. Pease*, except the statement made by Nunnemacher, the cashier of the Merchants' Exchange Bank, that he is informed and believes that such is the fact. Upon the hearing of the order no one appeared for Alexander E. Orr as assignee.

Upon the foregoing facts and upon his petition the said Pease asked the court to make an order requiring the Merchants' Exchange Bank to pay said check out of the funds standing to the credit of said firm, and for such other relief as was just and equitable.   Upon the hearing of the order to show cause, E. D. Davis, *Max Landauer*, as receiver, the Merchants' Exchange Bank of Milwaukee, *J. M. Pease*, and the Mechanics' National Bank of New York, appeared by their respective attorneys, and the court, after hearing the case, denied the prayer of the petitioner *Pease* and of the Mechanics' National Bank of New York, and ordered the Merchants' Exchange Bank of Milwaukee to pay to *Max Landauer*, as receiver, the amount standing to the credit of said firm of E. D. Davis & Co.   *Joseph M. Pease* appealed from the order, and the interest of *Pease* and the Mechanics' National Bank of New York having by mutual arrangement been united, the attorneys for said bank appear

for the appellant upon this appeal, waiving their right to the money by virtue of their garnishee proceedings.

For the appellant there was a brief by *Shepard & Shepard*, and oral argument by *Mr. T. R. Shepard*.

For the respondents there was a brief by *Jenkins, Winkler & Smith*, and oral argument by *C. H. Van Alstine*. To the point that the check did not operate as an assignment to the appellant, equitable or otherwise, of any part of the deposit, or give him a lien thereon, they cited *Bullard v. Rundall*, 1 Gray, 605; *Dana v. Third Nat. Bank*, 13 Allen, 445; *Carr v. Nat. S. Bank*, 107 Mass. 45, 49; *Loyd v. McCaffrey*, 46 Pa. St. 410; *Butterworth v. Peck*, 5 Bos. 341; *Tyler v. Gould*, 48 N. Y. 682; *Duncan v. Berlin*, 60 id. 151; *Att'y Gen. v. Continental L. Ins. Co.* 71 id. 325; *Risley v. Phenix Bank*, 83 id. 318, 325; *Bank v. Millard*, 10 Wall. 152; *Bank v. Whitman*, 94 U. S. 343; *Hopkinson v. Forster*, L. R. 19 Eq. Cas. 74; *S. C.* 11 Eng. (Moak), 685; *Colorado Bank v. Boettcher*, 5 Col. 185; *S. C.* 40 Am. Rep. 142; *Nat. Bank of Rockville v. Second Nat. Bank*, 69 Ind. 479; *Moses v. Franklin Bank*, 34 Md. 574; *Case v. Henderson*, 23 La. Ann. 49. The question has frequently risen upon bills of exchange. *Gibson v. Finley*, 4 Md. Ch. 75; *Poydras v. Delamare*, 13 La. Ann. 98; *Weinstock v. Bellwood*, 12 Bush, 139; *Gibson v. Cooke*, 20 Pick. 15; *Hutter v. Ellwanger*, 4 Lans. 8; *Harris v. Clark*, 3 N. Y. 93, 118; *Cowperthwaite v. Sheffield*, id. 243; *Winter v. Drury*, 5 id. 525; *Citizens' Bank v. First Nat. Bank*, L. R. 6 H. L. Cas. 352; 7 Eng. (Moak), 56; *Hopkins v. Beebe*, 26 Pa. St. 85; *Grammel v. Carmer*, 21 N. W. Rep. 419; *Bank of Commerce v. Russell*, 2 Dill. 215; *Lewis v. Traders' Bank*, 30 Minn. 134; *First Nat. Bank v. D. & S. W. R. Co.* 52 Iowa, 378. A check is a bill of exchange. *Harker v. Anderson*, 21 Wend. 372; *Chapman v. White*, 6 N. Y. 412, 417; *Franklin v. Vanderpool*, 1 Hall, 80; *Risley v. Phenix Bank*, 83 N. Y. 318; *Hopkinson v. Forster*,

L. R. 19 Eq. Cas. 74; *Mehlberg v. Fisher*, 24 Wis. 607. See, also, *Christmas v. Russell*, 14 Wall. 84; *Lunt v. Bank of N. A.* 49 Barb. 221; *Hibernia Nat. Bank v. Lacombe*, 84 N. Y. 380; Story on Agency, sec. 481.

TAYLOR, J. It will be seen from the foregoing statement of facts that the question whether the holder of a check can maintain an action at law against the bank upon which it is drawn, to recover the amount thereof, upon a refusal of payment on presentation, the drawer of the check having a deposit account in such bank to his credit for an amount equal to or in excess of the amount of the check at the time of presentation, is not involved in this case. Nor do we think the other question is involved, viz., whether the drawer of the check may lawfully, as between himself and the bank, direct the bank to refuse payment of his check drawn upon his account; or, in other words, stop payment of his check before presentation, so that the bank, though willing, would have no authority in law to pay the same on presentation. For the purposes of the consideration of this appeal, it may be admitted that the decided weight of authority is in favor of the proposition that no action at law can be maintained by the check-holder against the bank for a refusal to pay the same on presentation, and that the drawer may, before presentation, stop payment, so that the bank would have no legal authority to pay the same. The argument upon these questions, upon both sides, is clearly and ably stated by Mr. Morse in his work on Banks & Banking (2d ed.), 29, 35, 258, 263, 265, 266–275, 302–304, 525–538; and see cases cited.

It seems to us that the real question presented in this case is whether, in equity, as between the holder of a check for value and the drawer, the bank being indifferent as to whether the amount due to the drawer shall be paid to him or the check-holder, the check-holder should be paid in

preference to the drawer. The receiver in this case stands in no better position than the firm who drew the check; he stands in its place, and, for the purpose of this case, we must treat it as though the firm who drew the check was still in existence. *Coates v. First Nat. Bank*, 91 N. Y. 20, 26; 2 Story's Eq. Jur. (10th ed.), § 1228; Burrill on Assignm. (2d ed.), 483; *Hawks v. Pritzlaff*, 51 Wis. 160; *Estabrook v. Messersmith*, 18 Wis. 551; High on Receivers, § 495; *Van Alstyne v. Cook*, 25 N. Y. 489; Kerr on Receivers, 183–185.

Briefly, we have this state of facts: The firm of E. D. Davis & Co. gives *Joseph M. Pease* a check upon their bank in Milwaukee for the sum of $574.23, in settlement of an indebtedness due from them to *Pease*. At the time the check was given, and when presented for payment, there was sufficient standing to the credit of the firm in the bank upon which it was drawn to pay the same. The amount of the check is charged against *Pease* in their account with him, and credited to the bank on their account with the bank. Before the check is presented for payment at the bank, an action is commenced by one partner against the other to dissolve the partnership and close up its business. In that action a receiver is appointed, and the bank has notice of such appointment before the check is presented, and thereupon the bank declines to pay the check until the right of the receiver and the check-holder is determined by the court, and it retains in its possession the money due the firm, without objection by the firm or the receiver, until such determination can be had. No demand for the money is made upon the bank by the firm or the receiver, and, so far as appears from the evidence, the credit to the bank for the amount of the check remains, as well as the charge of the same amount to *Pease*, on the books of the firm. So far, at least, as Davis is concerned, he appears willing that the money should be paid to *Pease*, or to his assignee, if he

have one, if the note *Pease* agreed to surrender to him when the check was given be surrendered and canceled. This was done at the hearing of the order to show cause, so that the only objection Davis had to the payment of the money to *Pease* or his assigns was removed at the hearing.

I do not understand that the commencement of the action to dissolve the partnership, and the appointment of a receiver in that action, was in itself a revocation of the order upon the bank to pay the money to the holder of the check, and that if the bank had paid the check after a simple notice that a receiver had been appointed, without any direction on his part to the bank not to pay the check, the bank would have paid it in its own wrong, and have been liable for the amount so paid, either to the receiver or the firm. The receiver in such an action takes possession of the property of the firm for the benefit of the members of which it is composed, and not primarily for the benefit of the creditors of the firm.

Notwithstanding the absence of any direct evidence in the record upon the question, we think it may be fairly inferred that, upon the hearing of the order to show cause, the receiver made claim to the whole credit due from the bank to the firm, and resisted the payment of the check to the holder; but it does not disclose that any such claim was made by the firm or either of the members thereof. However that may be, we shall treat the question as though the receiver had the right, even as against the wishes of the members of the firm, to demand the payment of the amount due from the bank to him, and that such demand on his part must have the same effect in the law as though made by the firm or the members thereof.

We come back to the question stated above. As between the holder of a check for value and the drawer thereof, the bank upon which the check is drawn standing indifferent, and the drawer having an account to his credit

in the bank sufficient to pay the same, is the check-holder entitled in equity to have the money paid to him to the amount of his check, or may the drawer arbitrarily stop its payment and compel the bank to pay the money to him?

As a question of morality there can be no doubt as to the injustice of permitting the drawer to prevent the payment of his check. When he gave the check to *Pease*, it was with the implied if not express assurance that he had a credit at the bank upon which his check was drawn, sufficient to pay it, and that the bank would pay it on presentation, and that he would not himself do any act to prevent the bank from paying the same on presentation. Without this express or implied assurance on the part of the drawer of the check, it cannot be presumed *Mr. Pease* would have taken it upon the settlement of his claim against the drawer. Relying upon this assurance on the part of the drawer, he received the check, and it seems to us very clear that upon equitable principles the drawer is estopped from stopping its payment except for some good cause, and that if he does so arbitrarily he is guilty of a fraud which a court of equity will not sanction. But in this case the drawer did something more than merely giving his check to *Pease* for the amount due him; he charged *Pease* with the amount of the check and credited the bank with the payment thereof, and such charge and credit remains on the books of the firm apparently up to the present time. He has, therefore, so far as he could without the consent of the bank, appropriated so much of the debt due him from the bank as is necessary to the payment thereof, to such payment; and, the bank not objecting to such appropriation, there can be no equity in now allowing the drawer of the check to withdraw such appropriation without showing some reason for so doing. The bank not objecting, we think it is the plain duty of a court of equity to direct the payment of the check out of the funds in the bank to the credit of the drawer.

Upon this question courts have differed in opinion, but we think both reason and authority are in favor of the rule above stated. *Risley v. Phenix Bank*, 83 N. Y. 318, 328; *Coates v. First Nat. Bank*, 91 N. Y. 20; *Walker v. Seigel*, 2 Cent. L. J. 508; *German Savings Inst. v. Adae*, 8 Fed. Rep. 106; *Wheatley v. Strobe*, 12 Cal. 92, 97; *Harker v. Anderson*, 21 Wend. 372, 381; *Nat. Ex. Bank v. McLoon*, 73 Me. 498; *Bell v. Alexander*, 21 Grat. 1, 6; *In re Brown*, 2 Story, C. C. 502, 519; *Yeates v. Groves*, 1 Ves. Jr. 281; *Lett v. Morris*, 4 Sim. 607; *Row v. Dawson*, 1 Ves. Sr. 331; *Pope v. Huth*, 14 Cal. 407; 2 Daniel on Neg. Inst. § 1638; 1 id. § 23; Morse on Bank. 459, 474; Byles on Bills (7th ed.), 14, and note; 1 Story's Eq. Jur. 1044; Story on Prom. N. § 498, note 3. These authorities we think fully establish the rule that, as between the drawer of a check and the holder thereof for value, the drawing and delivery of the check operates as an equitable assignment of the account or fund upon which it is drawn, to the amount of the check, and as a consequence such equitable assignment is binding upon the drawer, and he cannot avoid it except for some good cause. All the learned authors and judges speaking upon the subject say that it is a fraud on the part of the drawer of the check to make the same, when he knows he has no credit or fund to draw upon, and that it is equally a fraud, as between him and the person to whom he gives the check for value, to withdraw the fund or credit before the check is presented for payment. Daniel, in his work on Negotiable Instruments, says: "As between drawer and payee on the one side, and the drawee on the other, it creates no obligation on the latter to pay it, as he has a right to insist on an integral discharge of his debt; and if the creditor give a subsequent order for the whole amount, he may pay it with impunity, as he thus discharges his whole debt in its entirety at once. But if the payee goes into equity, or if the parties are brought therein by

any proceeding, so that all of them are before the court, the holder of the order may enforce it as an equitable assignment as against all subsequent claimants, whether by assignment of the drawer or by legal process served upon the drawee." Sec. 23, p. 20; *Yeates v. Groves,* 1 Ves. Jr. 280; *Lett v. Morris,* 4 Sim. 607; *Bradley v. Root,* 5 Paige, 632; *Marine & F. Ins. Bank v. Jauncey,* 1 Barb. 486; *Harris v. Clark,* 3 N. Y. 93, 120; *Cutts v. Perkins,* 12 Mass. 209. See 3 Lead. Cas. Eq. (3d Am. ed.), 356.

The reason of this rule is that while the debtor cannot be subjected to several actions by several parties to recover one debt due to an assignor who has assigned the debt to several in distinct parts, without his assent, in equity all the parties entitled to the whole debt due from the debtor are before the court, and he is subjected to but one action for the whole debt, and the rights of all the parties are settled in one action. The objection, therefore, to splitting up the claim is obviated, and there is no reason why the several assignees of the debt should not have their rights settled in such equitable action. All parties entitled to any part of the debt due from the bank to the firm, or the receiver of the firm, being before the court, and the bank standing indifferent, and willing to pay to such party or parties as the court shall direct, it seems to us that it would be contrary to a fundamental rule of equity to permit the drawer of the check to prevent the appropriation of the fund in the bank for that purpose, when such act on his part would be a fraud upon the holder of the check.

We·are of the opinion that the county court should have either directed the payment of the amount of the check to the petitioner, *Joseph M. Pease,* or have directed the bank to hold the same until such time as the right to the same, as between *Pease* and the Mechanics' National Bank of New York as garnishee, should be determined; and in case it was determined that such bank was entitled to the money, as

against *Pease*, then have directed the money to be paid to such bank.

We are aware that there are decisions of courts of high authority which are in conflict with the rule above stated; but I think, as is well stated by the learned judge who decided the case of *German Savings Inst. v. Adae*, 8 Fed. Rep. 106, that " there is certainly no good ground for holding that a check drawn upon a fund in bank is not an equitable assignment as between the drawer and payee; and in a case where there is no controversy as to the rights of the bank or drawee, it does not lie in the mouth of the drawer or his assignee to say that such an instrument is not an equitable assignment."

*By the Court.*— The order of the county court is reversed, and the cause remanded for further proceedings in accordance with this opinion.