NORTHERN TRUST COMPANY, Assignee, v. CHARLES E. ROGERS and Another.[1]

February 1, 1895.

No. 9115.

### Assignment for Benefit of Creditors—Bank—Set-Off.

The debtor of an insolvent bank, which has made an assignment of all its property for the benefit of creditors, cannot set off against his debt to the bank a check drawn in his favor by a depositor of the bank before the failure of the bank, but which had not been presented for payment.

Action in the district court for Hennepin county by the assignee of the Farmers and Merchants State Bank upon a promissory note made by the defendant Rogers, and indorsed to the bank by the defendant Paulson. The counterclaim set up in the answer is stated in the opinion. From an order of the court, Russell, J., overruling

[1] Reported in 62 N. W. 273.

the demurrer interposed to the answer, plaintiff appealed. Reversed.

*H. D. Stocker*, for appellant.

*John W. Arctander*, for respondents.

MITCHELL, J. The Farmers and Merchants State Bank, being insolvent, on May 15, 1893, closed its doors, and stopped payment, and on June 20 made an assignment of all its property to plaintiff for the benefit of its creditors pursuant to the provisions of "the insolvent law" of 1881. Among the assets of the bank at the time of its failure was a note for $102.50 against defendant Rogers as maker and defendant Paulson as indorser. The Farmers Accident and Mutual Life Association was a depositor of the bank, and on May 13, and from that date down to June 20, had a deposit with it, subject to check, to the amount of over $300. On May 13 the Accident and Mutual Life Association, in payment of a debt which it owed defendant Rogers, gave him a check on the bank in the usual form for $105. This check had not been presented for payment when the bank closed its doors on May 15, and, as we construe the answer, there is no allegation that it ever has been presented. The sole question is whether, upon these facts, the defendants may set off the check in a suit brought on the note by the assignee of the bank. The case has been argued by the respective counsel upon the assumption that the answer to this question depends upon the further question whether a check is an assignment of the funds of the drawer to the amount of the check, so that, if the drawee bank improperly refuses payment, the holder may sue the bank. But we do not find it necessary to decide that question in the present case. It is the settled doctrine of the English and federal courts and of the great majority of the state courts that a check is not an assignment of the drawer's funds, either as between drawer and payee or as between the payee and the drawee; that if the check is not paid on presentation, the holder's only recourse is against the drawer; although some of these courts have sometimes, and under certain conditions, given effect to a check at least as an equitable assignment as between drawer and payee. That an unaccepted draft or ordinary bill of exchange will not, before acceptance, operate as an assignment to the payee of a debt due from the drawee to the drawer is the settled law every-

where, so far as we know. It has been so held by this court. Lewis
v. Traders' Bank, 30 Minn. 134, 14 N. W. 587. But of late years
some text writers and a few courts, while admitting the correctness
of the doctrine as applied to drafts or ordinary bills of exchange,
have expressed a strong dissent from its applicability to checks.
Any one interested in examining the arguments on that side of the
question will find them fully presented in 2 Morse, Banks, c. 34; 2
Daniel, Neg. Inst. § 1635 et seq.; and Merchants' Nat. Bank v.
Coates, 23 Am. Law Reg. (N. S.) 188. It is not our intention to enter
at this time upon a discussion of the merits of this question further
than to state generally the positions taken by the advocates of what
is sometimes called the "new doctrine." They claim that checks are
distinguishable from ordinary bills of exchange in this: that a check
is always drawn on a bank against funds deposited by the drawer,
while an ordinary draft or bill of exchange need not be; that there
is no reason for denying to the holder of a check a right of action
against the drawee bank on the ground that a claim or chose in
action cannot be split without the consent of the debtor, because
there is an implied promise (implied from the course of business)
on the part of the bank to pay out the money on the order of the
depositor in such sums as the latter may direct; that the old com-
mon-law doctrine of the nonassignability of choses in action no
longer obtains, and hence is no ground for denying the check holder
a right of action against the drawee bank; that this right of action
cannot be denied on the ground of want of privity of contract be-
tween the holder of the check and the drawee bank, "because privity
is a thing which the law manufactures whenever it sees fit," as
where A. makes a contract with B. for the benefit of C. The advo-
cates of this so-called "new doctrine" do not seem to be entirely
agreed as to whether the countermanding of the check by the
drawer will justify the bank in refusing to pay it, or as to just what
the situation and duty of the bank will be under such circum-
stances. We may suggest that this entire question is one which
should be determined more upon considerations of business usages
and business policy than of mere theoretical logic. The holding of
those courts which have repudiated the doctrine that a check does
not operate as an assignment under circumstances may, as we think,
be summed up as follows: That a check is an assignment of the

funds of the drawer to the amount of the check, which assignment is complete, as between the drawer and payee, when the check is given, but, as between the payee or holder and the drawee bank, is not complete as an assignment until presentation of the check for payment; that the giving of the check works no instant assignment as to the bank; that, as to it, before demand for payment no assignment exists, no obligation has been created, no privity has grown up, and the very right of the bank to pay may be taken away by any one of a great number of occurrences; that the act of presentment and demand, before any one of these occurrences has taken place, is that which creates at once, by the usage of business and understanding of all concerned, the obligation, the privity, and the appropriation, or at least the right to claim an appropriation. We think this is as far as any reliable authority has gone. In the present case, one of these occurrences happened before the presentation of the check, and hence, according to the doctrine referred to, before any obligation on the part of the bank on the check had been created, or any privity between it and the holder had grown up. The drawee bank had become insolvent, closed its doors, and assigned all its property for the benefit of its creditors, whose rights thereby became fixed and vested. And while the courts adopting the so-called "new doctrine" differ among themselves as to the rights of the holder of a check where the drawer has become a bankrupt or insolvent before the check was presented, yet we have found no case where they have held that, in case of the insolvency of the drawee bank before presentment of the check, the holder would be entitled to any preference, or to offset the unpresented check against his indebtedness to the insolvent bank. Even if it be not strictly logical, there is a controlling practical reason why the right of set-off should not be allowed in such cases. To allow it would be to open the door for the commission of fraud on the great body of the creditors of the insolvent bank, and would practically defeat the great object of the insolvent law, which is the equal distribution of the assets of the insolvent among all the creditors. In every case where a bank failed, having a large number of both creditors and debtors, it would be the easiest matter in the world for a number of each class to collude together, and, by the former giving antedated checks to the latter, to absorb all the assets of the bank to the exclusion of the other cred-

itors. Hence, in our opinion, whichever rule is adopted as to the effect of a check, the defendants were not entitled to the set-off. It does not follow from this that in the settlement of the estate of the bank the check may not be given effect as an assignment as between the holder and the drawer, so as to entitle the former to his pro rata share of the dividend paid on the amount of the drawer's deposit.

Order reversed.