RAESSER, Administrator, Appellant, vs. NATIONAL EXCHANGE BANK, Respondent.

*December 18, 1901 — January 7, 1902.*

*Banks and banking: Checks: Assignment of portion of deposit: Consent of depositary: Payment: Revocation: Death of maker: Rights of personal representative.*

1. Prior to the enactment of the Negotiable Instruments Law (ch. 356, Laws of 1899), it was settled in this state that the giving of a check for value on an ordinary bank deposit would be construed to intend an assignment of the fund *pro tanto*, as between the maker and the payee.
2. By an assignment for value of a portion of a fund in the hands of a depositary, the assignor parts with ownership of such portion, and as between himself and the assignee the transfer is complete, whether the depositary consents to the assignment or not.
3. If the depositary of a fund consents to the assignment of a portion thereof, he thereby merely confers upon the assignee a remedy to obtain from him that which already belongs to the assignee by the assignment.

4. By payment to the assignee in such a case the depositary discharges *pro tanto* all obligation, and the assignor has no rights against him in respect thereto.

5. The personal representative of a deceased depositor stands in no better position with reference to the deposit than his decedent did.

6. Where a bank check for a valuable consideration works an assignment of that portion of the deposit covered thereby, it not only authorizes the bank to pay, but evidences a contract between the maker and the payee which cannot be revoked except for good cause, such as fraud, etc. If, therefore, the bank pays after notice of revocation, it does so merely at the peril of being able to show a valid and irrevocable contract of assignment.

7. Death of the maker of a check is at most no more efficacious as a revocation than a revocation by act of the maker living.

8. The right of the depositary of a fund to refuse consent to a partial transfer thereof is absolute; and the transferee cannot, by any process of notice or demand, impose upon a nonconsenting depositary any duty to protect his equitable rights.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

The plaintiff's intestate, Bromley, had for some years been agent for a railroad freighting combination known as the Kanawha Dispatch, with duty to solicit shipments of freight, and collect and remit prepayments therefor. During a few months prior to March 11, 1897, he had collected such advance freight moneys, and deposited them to his own account in the defendant bank, to an amount considerably exceeding his then balance. He drew checks on March 2d, 3d, and 5th, payable to George A. Hood, cashier of said Kanawha Dispatch, aggregating $5,523.80, for specified freight collections as aforesaid, on various dates extending from December 18th to February 9th. These checks were received by Hood, at Cincinnati, in due course of mail, prior to March 11th, but were not presented to the bank for payment until subsequent to that date. Bromley died March 11, 1897, leaving a bank balance at that time of $6,005.97. The checks, having been first presented, dishonored, and

protested, were paid by the bank on the 23d and 27th days of March, upon being indemnified by the railroad companies whom Hood represented. Plaintiff was appointed administrator May 13, 1897. On November 21, 1898, he demanded payment of the entire sum on deposit at the time of Bromley's death, $6,005.97, which being refused, he later demanded and received the surplus above said four checks, $482.17.

The plaintiff commenced this action at law to recover the whole balance resting in said bank at the time of Bromley's death, $6,005.97. The defendant interposed answer, setting up the foregoing facts of payment; also setting up the fact that all of said moneys belonged to the railroad companies for whom Bromley was agent, as having been collected by him in a fiduciary capacity, and deposited therein. Trial was commenced to the court and a jury, but at the close of the evidence, by consent of both parties, the jury was discharged, and the court made findings of fact supporting payment of said checks, and held that a defense, upon which judgment was rendered for the defendant, from which the plaintiff appeals.

For the appellant there were briefs by *Sylvester, Scheiber & Orth*, and oral argument by *C. A. Orth* and *Fred Scheiber*.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *F. C. Winkler*.

DODGE, J.   This case, as argued by counsel, presents several interesting questions as to the relations resulting from the giving of a check for value on an ordinary bank deposit, if, as is now fully settled in Wisconsin, the giving of such check will be construed to intend an assignment of the fund *pro tanto* as between the maker and payee. *Pease v. Landauer*, 63 Wis. 20. The principles and reasons lying at the foundation of the rules of law fixing the rights of an assignee of a fund in the hands of an ordinary debtor or de-

positary are discussed at some length in *Skobis v. Ferge*, 102 Wis. 122, sufficiently, at least, so that only the differences between such depositary and the modern bank of deposit need be considered in applying such rules to the latter. The propositions decided in the *Skobis Case* were that the modern statutes authorizing suits to be brought by the true party in interest had removed all difficulties in the way of assignments of indebtedness, so that any act which, in the intention of the parties, as between assignor and assignee, constituted a transfer of an indebtedness or of a fund, gives a complete ownership and right of action therefor to the assignee, legal because enforceable by an action at law; that this principle is limited by the further consideration that a debtor or depositary owing one debt and subject to only one action therefor, cannot, without his consent, be subjected to the splitting up of that indebtedness so as to be liable to several actions. Hence that an assignment of a part of a fund, while effective as between the assignor and assignee, cannot be enforced by direct suit at law against the depositary without his consent. It can only be enforced by bringing into court the depositary and all claimants against the fund in one suit, where their various rights can be adjudicated. That form of action being cognizable only by a court of equity, it is said that the assignment is equitable only; not that it is less complete as between the parties, but merely not enforceable in a direct action at law against the depositary. This objection to its enforceability is one which the depositary can waive, as it is purely for his convenience and benefit; and he can waive it either in advance of the assignment or afterward, when demand is made upon him in or out of court, though he is under no legal or equitable obligation so to do. It will be observed that these limitations on the enforcement of the rights conferred by an assignment are based upon the dominant consideration of protecting completely the rights of the third party depositary not participating in the assignment.

Such being the law ordinarily, of course it should apply equally when a bank is a depositary, except so far as the relation between the bank and its depositors is such as to make the same reasons support different conclusions. The doctrine of *Pease v. Landauer*, 63 Wis. 20, is based upon one of those distinctions. It has been held from early times with almost unanimity that a bill of exchange drawn by one man upon another, not in any wise designating a specific fund out of which it is to be paid, works no assignment of a fund or portion of a fund which may chance to be in the hands of the drawee. This is based upon the fact, well recognized by the law merchant, that bills of exchange are not always — perhaps are not generally — drawn against funds. The ancient bill of exchange was a mere convenience for enabling a creditor of the drawer to receive his payment at some other place than the latter's residence, and it was drawn on correspondents who knew of the credit and responsibility of the drawer and were willing to pay money at his request and look to him for reimbursement, either by remittance or by reciprocal honor to their own bills of exchange. In modern times, at least, the check upon a banker has attained a different significance. The banker is not customarily or often in the habit of honoring checks except as they are drawn against a fund first placed in his hands for that purpose. This fact has been recognized in the rule, now well established, that it is a fraud to draw a check upon a bank where the drawer has no funds, and by the statutes, now quite general, making such an act criminal under certain circumstances. From this difference results the presumption, recognized and enforced in *Pease v. Landauer*, 63 Wis. 20, that one who draws a check upon a bank impliedly asserts that he has a fund in the hands of that bank out of which it is expected to be paid, and therefore that he assigns so much of that fund as the check calls for; just as if, between private individuals, the document declared on its face

the existence of a fund in the hands of a drawee and ordered the bill of exchange paid therefrom.

The further question is interesting, and not yet decided, in Wisconsin at least, whether, from the very purpose of a deposit to be drawn against by checks to different parties, there does not arise an understanding and agreement, in advance, by the bank to pay such deposit, not necessarily *in solido* as between ordinary debtor and creditor, but in such sums and to such people as the depositor may, by his checks, direct.   If such an agreement is to be implied from the ordinary course of business, there would seem forceful logic for the conclusion that the assignment resulting from the giving of a check for value, complete and valid as between the maker and payee, should be enforceable in a suit at law against the bank.   It must be conceded that the overwhelming weight of authority is to the negative of this conclusion, and yet the greater part of that authority is from jurisdictions which do not recognize the rule of *Pease v. Landauer*, 63 Wis. 20, and give to a check no efficacy whatever as an assignment, but recognize it merely as an authority from the bailor to his bailee.   The question thus suggested is reserved in *Pease v. Landauer*, in *Skobis v. Ferge*, 102 Wis. 122, and in *Dillman v. Carlin*, 105 Wis. 14, 17, and, but for certain statutory provisions recently enacted in Wisconsin, would be worthy of grave consideration, and perhaps decision, in the present case. But, inasmuch as by the new Negotiable Instruments Law (Laws of 1899, ch. 356, sec. 1684—5) it is provided that the bank shall not be liable to the holder of a check unless and until it accepts or certifies it, the question of such liability independently of the statute is no longer a general or important one, and, unless essential to the decision of the instant case, should not further occupy our time; although the present checks, having been given in 1897, are not controlled by that statute.

Independently, then, of the question whether the holder

of a check for value can sue the bank thereon at law without its consent, what are his rights against that fund as between him and the maker, or one claiming in the right of the latter as a volunteer and not for value, when the depositary, who still has the fund, consents to its splitting up and to the assignment accomplished by the giving of the check? Of course, upon the hypothesis stated, those rights are precisely the same as if the depositary were not a bank. The authorities already cited leave no doubt that by an assignment for value the assignor parts with ownership of so much of the fund; as between him and the assignee the transfer is complete. He is not concerned in the question whether the depositary consents or not. Such consent only has the effect to confer upon the assignee a remedy to obtain from the fund holder that which is already his by the assignment. The conclusion would seem irresistible that when such consent is given, and the assignee has recovered his part of the fund by suit or otherwise, the depositary no longer holds it and cannot be liable for it to the original depositor. It is no answer to this view to suggest that, even though the depositary refuse consent, the fund is, upon this reasoning, none the less transferred out of the assignor, and he ought not to have an action for what is not his; which conclusion would produce the absurdity of the depositary being free from suit by any one. In that case the depositor can, of course, recover against the depositary, not because the fund is his, but because the latter is estopped to deny such ownership by his own act in refusing to recognize the transfer. When, however, he does consent, and pays that which has been validly assigned to the assignee, he discharges to that extent all obligation, and the former owner of the fund has no rights against him.

That a transfer of the depositor's interest in the whole fund by operation of law and without value confers no higher rights than he had, is too well settled in Wisconsin

to warrant reconsideration even in deference to an apparent suggestion the other way by the supreme court of the United States in *Laclede Bank v. Schuler*, 120 U. S. 511, 515, which case, by the way, is much limited by *Fourth St. Bank v. Yardley*, 165 U. S. 634. In *Pease v. Landauer*, 63 Wis. 20; *Skobis v. Ferge*, 102 Wis. 122; and *Dillman v. Carlin*, 105 Wis. 14, it is held that a receiver, an assignee for creditors, and a garnishing creditor stand in no better position than the original depositor. An administrator's rights are the same. He, too, " stands in the shoes " of his intestate.

But, says the appellant, the maker may revoke a check, and thereafter the bank has no right to pay it, and the maker's death is *ipso facto* a revocation when brought to the bank's knowledge. Except the last, these propositions are supported by a vast array of authority dating from the earliest recognition of the law merchant, and, correctly understood, are not to be gainsaid. They, however, are applicable only to the relation between the maker and his bailee or depositary. Their use in a case like the present is due to failure to distinguish the two separate functions of a bank check as established in our jurisprudence. A check is, and always has been, primarily an authority from the maker upon which his banker may rely, but in which the latter has no interest until he has acted thereon. As such authority merely, it is, of course, revocable until acted on, and its revocation takes from the banker all the protection it would otherwise afford him as a mere authority or direction to pay. In that sense he thereafter has no right to pay, and such statement of the law is strictly accurate when and where a check is nothing more, though doubtless it has been used in other jurisdictions without the qualification necessary to its exact comprehension. Where, however, a check for a valuable consideration works an assignment of the deposit, equitable or legal, such a check is something more than a mere authority to pay. It also evidences a contract between the

maker and payee, and, if that contract is a valid and irrev-
ocable one, the check cannot be revoked as between them.
If, by that contract, the payee has become the owner of the
fund, the bank may safely pay it to him, not by virtue of
the check as an authority alone, but by virtue of his actual
ownership.     Before he is notified of any revocation, the
banker will be protected by the check as an authority, with-
out regard to the validity of the contract of assignment;
after notice of revocation, the latter fact alone can protect
him.     He then pays at the peril of being able to establish a
valid and irrevocable contract of assignment.     If that con-
tract be otherwise; as, for example, if obtained by fraud, so
that the maker of the check can rescind it as against the
payee, doubtless the banker who pays a check in defiance
of a revocation can base no defense thereon.     This is the
force of the declaration in *Pease v. Landauer*, 63 Wis. 28,
that the drawer cannot "arbitrarily" or "except for some
good cause" stop payment and avoid the assignment; that
such act would be a fraud.

In this view, then, we need not consider whether the death
of the drawer revokes a check.     If it does so, it is no more
efficacious than a revocation by act of the party living.     The
law will not, of its own motion, work the same fraud which
it would not permit a living person to perpetrate by his own
act.

Perhaps this discussion ought not to close without a pre-
cautionary suggestion against carrying too far the logical
deductions from the assertion that a partial assignment of a
fund is effective to give the assignee complete ownership,
except as he lacks right of action.     This does not warrant
the view that by any process of notice or demand he can
impose on the nonconsenting depositary any duty to protect
his equitable rights, or any trammels upon the latter's free-
dom in paying out the fund to others, either *in solido* or in
parcels, as he pleases.     At this point in the logic one is con-

fronted by what is elsewhere termed the "dominant con-
sideration" of protecting completely the rights and the
convenience of the depositary.    His right to refuse consent
to a partial transfer is absolute, and cannot be controlled.
*Dugan v. Knapp*, 105 Wis. 320, 323; *Smelker v. C. & N. W.
R. Co.* 106 Wis. 135, 139; *Skobis v. Ferge*, 102 Wis. 122, 136.

From what we have already said the conclusion must be
manifest.    Bromley, in his lifetime, having transferred the
fund in question by his four checks for the very strongest
consideration, namely, the receipt and incorporation into
that fund of the payee's money, it belonged thereafter to
the payee, and not to Bromley.    The bank had absolute
right to consent to and recognize such transfer.    It did so,
and has paid the fund to its owner.    This constitutes a
complete defense against any demand for that money by
either Bromley or his representative.    Such defense is good
in an action at law none the less because the bank might,
at its election, have compelled the holder of the checks to
sue in equity.    *Dobbs v. Kellogg*, 53 Wis. 448.    It might
equally have consented to an action at law.    The transfer
from Bromley having been complete as against him in his
lifetime, it was equally complete as against the plaintiff, his
administrator; and the latter is shown by the facts proved
and found to have no right of recovery.    The judgment
against him was therefore correct.

*By the Court.*— Judgment affirmed.