## SAM TAYLOR v. FIRST NATIONAL BANK OF MINNEAPOLIS.[1]

December 6, 1912.

Nos. 17,980—(260).

**Pleading — allegations that payment of check was stopped.**

The answer of a bank to a suit brought by the payee of a check, drawn on ample funds on deposit, averred that, before the check was presented for payment, the drawer notified the bank that the check was without consideration and was obtained by fraud, and directed the bank not to pay the same,

[1] Reported in 138 N. W. 783.

Note.—As to liability of bank for refusing payment of check, when it has funds, see note in 15 L.R.A. 134.

As to right to stop payment of check, see note in 30 L.R.A. 845.

Action by drawee essential to terminate drawer's right to stop payment of check, see note in 39 L.R.A.(N.S.) 655.

and that during all the time that the drawer had had funds on deposit, and long prior thereto, the custom and usage prevailed, among banks and their depositors in the city and state where were all the parties, that before a check is presented for payment the drawer has the right to revoke the authority of the bank to pay, *held* not demurrable.

Action in the district court for Hennepin county to recover $10 upon a check drawn upon defendant bank. From an order, Waite, J., overruling plaintiff's demurrer to the answer, he appealed. Affirmed.

*Eugene Bryan* and *F. E. Clinite,* for appellant.

*Lancaster, Simpson & Purdy,* for respondent.

HOLT, J.

The complaint alleges and the answer admits the execution and delivery of the check, its indorsement and presentment for payment by plaintiff, and the refusal of the defendant bank to pay, although it had sufficient funds of the drawer on deposit with which to pay. The answer by way of defense alleges that the drawer of the check, before plaintiff presented the same to the bank for payment, ordered payment stopped, and directed defendant not to pay the same, on the ground that plaintiff obtained it from the drawer by fraud and without consideration. It is also averred that at the time the check was drawn, and for a long time prior thereto, a custom and usage prevailed between the banks and their depositors throughout the state that a bank withhold and refuse payment of a check, drawn for a part of the amount on deposit, whenever the drawer thereof notified the bank so to do prior to the presentation of the check for payment.

This court, in Wasgatt v. First Nat. Bank of Blue Earth, 117 Minn. 9, 134 N. W. 224, held that a check is a pro tanto assignment of the funds of the drawer on deposit with the drawee bank, so that, if the bank refuses payment when it has sufficient funds of the drawer on deposit, the payee may maintain an action against the bank upon the check. Plaintiff insists that it necessarily follows that the drawer cannot stop payment, or revoke the authority of the bank to pay, for as far as he is concerned the money belongs to the

payee. We do not think the decisions of this court point to the conclusion contended for by appellant, nor do those of any other court committed to the doctrine that à check is an assignment pro tánto of a depositor's funds, unless it be that of Illinois. We are now speaking of a check in the hands of the payee, and not of one that has in due course of business been transferred to a bona fide holder for value. It is manifest that the execution and delivery of a check to the payee does not, of itself, transfer the amount of the deposit represented by the check to the payee, so that without more the bank holds the funds for the payee. Therefore, the courts which have adopted the rule that a check is a pro tanto assignment of the drawer's funds, also recognize the fact that the assignment does not become fully consummated until the check is presented for payment. Before that is done, the depositor may in various ways make nugatory the tentative assignment made by the check against the funds on deposit. For instance, he may go to the bank before the check drawn by him is presented and withdraw the whole deposit, or he may have exhausted the same by subsequent checks presented and paid before the one upon which the right to hold the bank is sought. In the decision in Wasgatt v. First Nat. Bank of Blue Earth, supra, it is clearly intimated that, between the execution of a check and its presentment for payment, occurrences may intervene to prevent the consummation of the assignment. This is in line with the language of the court in Northern Trust Co. v. Rogers, 60 Minn. .208, 62 N. W. 273, wherein the status of the bank with relation to a check holder is thus stated:

"Before demand for payment no assignment exists, no obligation has been created, no privity has grown up, and the very right of the bank to pay may be taken away by any one of a great number of occurrences; that the act of presentment and demand, before any of these occurrences has taken place, is that which creates at once, by the usage of business and understanding of all concerned, the obligation, the privity, and the appropriation, or at least the right to claim an appropriation."

In the well considered case of Raesser v. National, 112 Wis. 591, 88 N. W. 618, by a court which, prior to the enactment of the uni-

form negotiable instruments law, adopted and adhered to the same rule as this court in the Wasgatt case, supra, it is said that, if a bank is notified by the drawer of a check not to pay because the payee therein procured it without consideration or by fraud, the bank pays at its peril. In Weiand's Administrator v. State, 112 Ky. 310, 65 S. W. 26, 56 L.R.A. 178, the court concludes that there "is no good reason why, as between the immediate parties to the check (where innocent parties are not affected) the drawer may not revoke or countermand" a check. And neither do we see any good reason for either a rule of business, or law, which will throw the risk upon a depositary or bailee holding a fund under a contract or obligation with the depositor alone to determine at his peril who is entitled to part thereof, after notice from the depositor that the instrument by which another claims the right to such part is for some reason invalid.

Nor can it be said that by the decisions in this state, or by deductions therefrom, it is settled law that the drawer of a check may not, before the same is presented for payment, revoke the bank's authority to pay; hence, there is nothing to prevent the business custom and usage pleaded in the answer from controlling the disposition of the case. The general custom and usage according to which a business, as for instance that of banking, is carried on in a state becomes in the nature of a law pertaining thereto, so that parties may be said to contract with reference to it. Clarke v. Hall & Ducey Lumber Co. 41 Minn. 105, 42 N. W. 785. Mr. Justice Mitchell, in Northern Trust Co. v. Rogers, supra, with regard to the matters here involved, suggests "that this entire question is one which should be determined more upon considerations of business usages and business policy than of mere theoretical knowledge."

Applying the rule indicated, the solution is clear, for the answer alleges that the custom and usage prevails between all banks in the state, including the city wherein is defendant's bank, and their depositors that, before a check is presented for payment, the drawer has the right to stop payment thereof. Since a depositor of a bank may at any time, by drawing out his whole deposit, prevent payment of a check previously drawn by him, so that no claim whatever could be made by the payee against the drawee bank, we apprehend

no inconvenience or injustice will result from a recognition by the court of the business usage pleaded in the answer and admitted by the demurrer. The practice and usage pleaded become part of the legal contract or obligation between the depositor and the bank under which the funds deposited are to be paid out, so that the checks drawn against the deposit necessarily become subject thereto, at least so long as such checks remain in the hands of the payees.

The defendant asks us to go further and determine that a depositor may stop payment of a check after it has passed into the hands of a bona fide innocent holder. We deem it inexpedient to discuss or determine that question on this appeal, for it is not involved in the demurrer.

This cause having been set down for oral argument in violation of rule XV, no costs will be allowed.

Order affirmed.