Missouri Pacific Railroad Company v. North Arkansas

Highway Improvement District.

Opinion delivered March 2, 1925.

1. Evidence—hearsay.—Testimony of a railroad demurrage inspector that demurrage was due by defendant road district on certain cars of gravel was hearsay where he had no personal knowledge of the time of arrival of the cars or of the alleged delay in unloading them, but drew his information from records required to be kept by the station agent.

2. Bills and notes—right to stop payment of draft.—Where defendant bank issued a draft on a correspondent bank in favor of plaintiff upon the supposition that its depositor had ordered a claim to be paid to plaintiff, upon learning that this was a mistake the bank had a right to stop payment of the draft, without becoming liable therefor, where the draft was not certified and delivered to an innocent purchaser.

Appeal from White Circuit Court; *E. D. Robertson,* Judge; affirmed.

*Thos. B. Pryor* and *H. L. Ponder,* for appellant.

A preponderance of the evidence shows both the authority of the engineer to make the settlement, as well as the ratification thereof later by the commissioners. It was therefore error to direct a verdict, as the evidence

was conflicting. The court can only direct a verdict where from the evidence only one conclusion could be reached. 147 Ark. 206; 144 Ark. 229; 126 Ark. 427; 132 Ark. 97; 132 Ark. 508. The bank was liable after it accepted the demurrage bills and issue its draft to appellant. 7 C. J. 705-707; 54 Am. Rep. 50; 17 Am. Ref. 305; 160 Fed. 642; 116 Ark. 1; 10 Wall (U. S. ) 604; 217 Mass. 441; 85 Mo. 173; 120 Pac. 886; 6 Jones & S. (49) 190; 9 A. L. R. 960.

*Brundidge & Neely,* for appellee.

The check in question was not a certified one, nor accepted by the bank upon which it was drawn, and still was in the hands of the original holder. No rights of third parties had intervened, and, as the check was given through mistake, the bank had the right to stop payment. 7 C. J. 709 and 710; 31 N. E. 386; Ann. Cas. 1914 A. 1302; 9 A. L. R. 1069.

Smith, J. The appellant railroad company brought suit to recover the sum of $201 alleged to be due it for demurrage on shipments of gravel to Higginson, Arkansas, to appellee road district, which was engaged in building a hard-surface road in White County.

The original complaint alleged that there was a settlement of the amount claimed for demurrage between appellant and appellee, and that $201 was agreed upon as the amount due appellant. Later appellant filed an amended complaint making the People's Bank of Searcy, a party defendant, it being further alleged that, after a voucher had been given by the road district in payment of the demurrage, the agent of appellant company surrendered the voucher to the People's Bank, the depositary of the district, and that the bank took up said voucher and gave its draft on a bank in St. Louis for said amount. That appellant received the St. Louis exchange for said sum in full settlement of all amounts due it by the road district, and thereafter the bank stopped payment of the exchange, without cause. It was also alleged that the defendant bank was also liable to appellant by reason of the exchange given appellant.

At the conclusion of all the testimony the court directed the jury to return a verdict in favor of the defendants, and from the judgment pronounced thereon is this appeal.

For the reversal of the judgment it is first insisted that the road district was bound by reason of the settlement of these items made between its agent and the engineer of the district. It was shown that the company's agent and the engineer of the district went over the files and waybills of the railroad company, and it was agreed by the engineer that the district owed the railroad $201 by way of demurrage on cars of gravel which the district had failed to unload within the time allowed for that purpose, and that, after this settlement was made, the engineer of the road district directed the cashier of the bank to pay the amount agreed upon, and that this was done by issuing to the order of the railroad St. Louis exchange.

There was no testimony, however, that the engineer of the district possessed the authority to thus bind the road district. Upon the contrary, the undisputed evidence shows that he did not possess any such authority, and, when the commissioners of the district were advised what had been done, they immediately repudiated the settlement made by the engineer, upon the ground that the district did not owe and would not pay the demurrage claimed, and both the engineer of the district and the cashier of the bank were notified that, if the St. Louis draft was paid, either the engineer or the bank would have it to lose. The payment of the draft on St. Louis was thereupon stopped by the bank.

It is insisted that the court should at least have submitted to the jury the question whether there was any demurrage due the railroad.

The only testimony, however, to support the claim for demurrage was that of a demurrage inspector for the railroad company, who lived in Little Rock, and he had no personal knowledge of the time of arrival of any of the cars of gravel or of the alleged delay in unload-

ing them.   He could only testify what the records of the station agent at Higginson showed.   He testified that the station agent was required to keep such records.   His only knowledge of the facts was based on the showing thus made.   We think this testimony was hearsay, and did not establish the fact that the district was liable for any demurrage.   The agent who made these records might have used them to refresh his recollection, and might have testified that the records were correct when made, but the testimony offered amounted to no more than a detailed showing as to what the records disclosed.   However, the witness admitted that he knew nothing about any of the cars except what the records showed.

The testimony offered on behalf of the district was to the effect that there was no demurrage due the railroad.

It is next insisted that the bank was liable after it accepted the demurrage bills and gave its draft to the railroad company, and cases are cited as to the binding effect of the certification of the draft by the bank.

We think, however, that those cases do not apply to the facts of this case.   The exchange drawn by the defendant bank was not a certified check, nor had it been accepted by the bank upon which it was drawn, nor had it passed into the hands of an innocent third party.

The defendant bank issued the check to the railroad upon the assumption that the road district had directed that the claim for demurrage be paid.   But this was shown to be a mistake.   The road district did not desire any part of its funds held by the bank as its depository to be appropriated to the payment of this claim, and there was therefore no consideration to support the check drawn by the defendant bank on its St. Louis correspondent, and it had the right to stop its payment without becoming liable for the amount thereof on that account.

The case of *Taylor* v. *First National Bank of Minneapolis,* 138 N. W. 783, Ann. Cas. 1914A, 1302, was one in which the drawer of a check had ordered payment stopped on the ground that the payee had obtained it

from the drawer by fraud and without consideration. It was there insisted that, inasmuch as a check is a *pro tanto* assignment of the funds of the drawer on deposit with the drawee bank, the drawer could not stop payment or revoke the authority of the bank to pay, and that, so far as the drawer is concerned, the money belongs to the payee. After pointing out that the court was not considering a check which had been transferred to a *bona fide* holder for value, it disposed of the contention stated by saying: "We do not think the decisions of this court point to the conclusion contended for by appellant, nor do those of any other court committed to the doctrine that a check is an assignment *pro tanto* of a depositor's funds, unless it be that of Illinois."

The court further said that it saw no good reason for a rule of business or of law which would throw upon the bank upon which a check was drawn the duty of determining, at its own peril, who is entitled to the funds represented by a check, after notice from the depositor that the instrument by which the payee claims the fund is for some reason invalid.

This case is extensively annotated, and many cases are cited which support the conclusion announced by the Supreme Court of Minnesota.

In the case of *Tremont Trust Co.* v. *Burack,* 9 A. L. R. 1067, 126 N. E. 782, it was said by the Supreme Judicial Court of Massachusetts that, "by the great weight of authority, the drawer of a check retains the right to countermand its payment at any time before it is paid or is certified and delivered to a *bona fide* holder for value."

We conclude therefore that defendant bank was not liable for the amount of the check on St. Louis by stopping its payment, as it had the right to do so after being notified that there was no consideration to support it.

No error was committed in directing a verdict for the defendants, and the judgment is affirmed.