SOL POLOTSKY, Plaintiff Below, Plaintiff in Error, *v.* ARTISANS SAVINGS BANK, Defendant Below, Defendant in Error.

(*October* 27, 1936.)

WOLCOTT, Chancellor, LAYTON, C. J., HARRINGTON, RODNEY and SPEAKMAN, J. J., sitting.

*Cohen* and *Cohen* for plaintiff in error.

*Horace G. Eastburn* and *Bayard W. Allmond* for defendant in error.

Supreme Court, No. 2, January Term, 1936.

Wolcott, Chancellor (delivering the opinion of the Court) :

Polotsky, the plaintiff, sued the defendant, a bank, in the court below in assumpsit to recover two hundred dollars which the plaintiff had deposited with the defendant. The declaration averred the indebtedness, a demand therefor and a refusal by the defendant to pay the same. It contained also the common counts for money had and received and money found due upon an account stated.

The case was tried before the court without a jury, the parties so stipulating.

The question before the court below was a question of law, there being no substantial dispute between the parties upon the facts. The court below found in favor of the defendant and entered judgment accordingly. The plaintiff duly excepted and sued out the pending writ of error.

The facts are as follows. On January 6, 1934, the plaintiff had on deposit with the defendant the sum of two hundred dollars. Plaintiff entered into a contract with The Eugenics Company of Alliance, Ohio, by the terms of which the plaintiff agreed to purchase from The Eugenics Company certain birth control literature and contraceptive preparations. Plaintiff was to have the right of exclusive sale and distribution of the said preparations in designated territory. The literature was to be circulated by the

plaintiff in advertisement of the preparations and their effectiveness as contraceptive agents. The contract obligated the plaintiff to pay five hundred and four dollars, of which two hundred was to be paid before the literature and contraceptive materials· were shipped by The Eugenics Company to the plaintiff.

On January 6, 1934, the plaintiff called at the defendant's banking house to withdraw two hundred· dollars with which to make the first payment on the contract. He had with him his pass book. The bank, a savings institution, required the presentation of the depositor's bank book before a withdrawal would be permitted. It was the custom of the bank to pay all withdrawals of two hundred dollars or less in cash, and of amounts in excess of that sum by its check upon another bank in which it had funds on deposit.

Plaintiff requested the defendant not to. give him the cash. He requested a check. In response to the request, the defendant drew its check for two hundred dollars on Wilmington Trust Company, to the order of the plaintiff. Proper.entries were made by the defendant upon the plaintiff's pass book and upon its own ledger, showing the withdrawal by the plaintiff of the sum of two hundred dollars.

In the presence of an officer of the bank, plaintiff endorsed the check as follows: "Pay to the order of The Eugenics Co." He forwarded the check so endorsed to The Eugenics Company. Before the check was presented to Wilmington Trust Company for payment, the plaintiff concluded that his contract with the Eugenics Company was tainted with illegality. Thereupon he requested the defendant to stop payment on the check. This the defendant refused to do unless plaintiff furnished it with an·indemnity bond to protect it against possible damage in the event of suit against it by any subsequent holder.

The check was forwarded to Wilmington Trust Company by The Eugenics Company through regular banking channels, was presented for payment and was duly paid by Wilmington Trust Company on January 10, 1936.

On this state of facts the plaintiff contends that the defendant was under the duty of stopping payment upon the check on the plaintiff's demand, and is liable to the plaintiff for its refusal so to do.

The question is whether the plaintiff as payee of the check was entitled as a matter of law to require the defendant to exercise the right of countermand. Otherwise put, the question is—has the payee of a check of the kind here involved the right to stop its payment?

The court below answered this question in the negative. (See 7 *W. W. Harr.* (37 *Del.*) 142, 180 *A.* 791.) It took the view that a check drawn by one bank upon another is not subject to countermand by the drawer. If the law recognized no power in the maker to countermand, it followed, said the court below, that there could be no right in the payee to require a countermand. If the premise on which the court below relied be accepted as sound, viz., that the maker of the check in question had no right in law to countermand its payment, it would follow of course that the payee had no right in law to require the maker to attempt the legally impossible act.

We are of the opinion that the premise upon which the court below proceeded was an erroneous one. If the check in this case had been one wherein the maker was not a bank, the right of the maker to stop payment thereof at any time before payment would be unquestioned. 5 *R. C. L.* 526. The court below recognized this proposition. But it held that where the maker of the check is a bank the right to stop payment is not allowed by the law. The principal authority

upon which the court below relied for its holding is *Kohler v. First National Bank of Tonasket,* 157 *Wash.* 417, 289 *P.* 47. Upon the point in question, the decision in that case was by a closely divided court, four of the judges holding that a bank draft drawn by one bank upon another in which it had funds on deposit was not subject to countermand, and three holding to the contrary. The majority opinion in the cited case categorized bankers' checks so far as the right is concerned to stop payment thereof, with national banknotes, certified checks and cashiers' checks. In the instant case the check may be characterized as a banker's check, that is to say a check drawn by a bank to the order of a third party upon another bank with which the drawing bank has funds on deposit. Such checks possess distinguishing features which set them forth in strong contrast with national banknotes, certified checks and cashiers' checks.

A national banknote is made impossible of countermand or, more accurately speaking, of repudiation, by act of Congress and is endowed by legislative fiat with the quality of a monetary circulating medium. A banker's check has of course no such legislative aid to sustain the permanence of its vitality. It is therefore distinguishable from a national banknote in a highly important particular other than in the point of security beneath it, which was the only point of substantial differentiation between the two that the majority of the court in *Kohler v. First National Bank of Tonasket, supra,* adverted to. The distinctive feature of a legislatively imposed character which is possessed by a national banknote is wholly lacking in a banker's check. This feature, rather than the one of greater security (which in our opinion is merely incidental) is the only important feature to be taken into account when the question of susceptibility to countermand is under consideration.

A banker's check as we have defined the term, is

likewise distinguishable from a certified check in a respect that bears a logical relation in legal conception to the question of whether the same right to countermand should attach to the one as to, the other. Where a check in the ordinary form is drawn, whether by an individual or a bank, and the same is not certified, there is no transfer nor assignment of funds from the maker's account to the credit of the payee. The check remains nothing but an order revocable at any time before acceptance. *Tremont Trust Co. v. Burack,* 235 *Mass.* 398, 126 *N. E.* 782, 9 *A. L. R.* 1067. Where, however, the check has been certified by the bank its character as a mere order has so far been lost to it that the question of the maker's control over its payment is tested by entirely different principles, due to the arising of a liability on part of the drawee-bank because of its certification. *Causey v. Eiland,* 175 *Ark.* 929, 1 *S. W.* (2d) 1008, 56 *A. L. R.* 529. This liability of the certifying bank introduces a new party who, in varying circumstances that need not here be elaborated upon, will be regarded by the law as independently liable to the holder. The following two cases from New Jersey are illustrative of some at least of the alterations in legal rights which the factor of certification introduces into the relation of the parties. *Times Square Automobile Co. v. Rutherford National Bank,* 77 *N. J. Law* 649, 73 *A.* 479, 134 *Am. St. Rep.* 811; *Sutter v. Security Trust Co.,* 96 *N. J. Equ.* 644, 126 *A.* 435, 35 *A. L. R.* 938.

Then, too, a banker's check is markedly distinguishable in its nature from a cashier's check to which in point of countermandability it was likened by the majority of the court in *Kohler v. First National Bank of Tonasket, supra.* A cashier's check is, as we understand the term, a check drawn by a bank upon itself to the order of the payee named therein. Such a check is denominated by the courts as being what in reason it is, a bill of exchange drawn by a

bank upon itself and accepted in advance by the act of its issuance. *Drinkall v. Movius State Bank,* 11 *N. D.* 10, 88 *N. W.* 724, 57 *L. R. A.* 341, 95 *Am. St. Rep.* 693; *Causey v. Eiland, supra.* It therefore possesses none of the characteristics of a mere order to pay money. It is a primary obligation of the bank. *Bank of Statham v. National Bank of Athens,* 143 *Ga.* 293, 84 *S. E.* 966. It becomes the obligation of the issuing bank as much so as if the bank had given a promissory note instead of its check. *Scott v. Seaboard Securities Co.,* 143 *Wash.* 514, 255 *P.* 660; *Walker v. Sellers,* 201 *Ala.* 189, 77 *So.* 715. The instrument, therefore, being one of primary obligation on the part of the bank, there can be no right of countermand by it such as exists where the document constitutes a mere direction or order to pay. The difference is a most material one.

We have in the foregoing pointed out wherein the analogies upon which the majority of the court relied in *Kohler v. First National Bank of Tonasket* in support of its opinion that a banker's check is not subject to countermand, are in our opinion so differentiable in point of legal concept and theory, that the result reached is not sustainable.

It remains only to say of that case, that we can see no danger of unsettling the basic principles of our entire law of commercial paper, as the majority of the court apprehended, if banker's checks are left subject to the same possibility of countermand as are the ordinary checks of individuals. The latter enter extensively, more so, we dare say, than do banker's checks, in facilitating the commercial transactions of the business world. That they are subject to countermand has never been recognized as disturbing the confidence of commercial intercourse.

In numerous cases which we have examined and which we do not pause to cite, the facts disclosed that banker's

checks have been countermanded by the drawer-bank and no point was made of the fact either by the parties litigant or by the court in its opinion; and in *Missouri Pacific R. R. Co. v. North Arkansas Highway Improvement Dist.*, 168 *Ark.* 141, 269 *S. W.* 569, it was expressly decided that a banker's check is as much subject to the right of the drawing bank to stop payment as is the ordinary check drawn by an individual. See, also, *Wagle v. Farmers' State Bank (Mo. App.)*, 280 *S. W.* 62.

Our conclusion is that the ground upon which the court below rested its conclusion was erroneous.

We are now to inquire whether the judgment rendered by the court below, though the reason on which it was founded is in our opinion not acceptable, should be reversed. We think it should not be reversed. Our reason for this conclusion is as follows:

The plaintiff's transaction with the bank was one of purchase of the check. The requisite amount of money to pay for the same was charged to the plaintiff's account. It was as though the plaintiff paid to the bank two hundred dollars in cash as consideration for the check. The plaintiff ceased to be a depositor to the extent of two hundred dollars and became the payee of a bill of exchange payable on demand, drawn to his order by the defendant upon Wilmington Trust Company as drawee. Plaintiff for a consideration acquired the defendant's negotiable instrument. He purchased the defendant's credit. The transaction in that sense became an executed one. *Moe v. Bank of the U. S.*, 211 *App. Div.* 519, 207 *N. Y. S.* 347; *American Express Co. v. Cosmopolitan Trust Co.*, 239 *Mass.* 249, 132 *N. E.* 26; *Gravenhorst v. Zimmerman*, 236 *N. Y.* 22, 139 *N. E.* 766, 27 *A. L. R.* 1465. The obligation which the defendant owed to the plaintiff after the transaction thus became an exe-

cuted one, ceased to be that of a bank to its depositor. The obligation was that of the drawer of a draft which it sold to the payee therein.

The declaration in the court below, however, rests on the theory that the plaintiff continued to be a depositor in the amount of two hundred dollars. This is an erroneous conception, and it may therefore well be that if the plaintiff has a good cause of action on the merits, it is not recoverable on the averments as made in the declaration.

But we lay aside the question of whether the declaration properly describes the alleged cause of action, preferring to rest our decision of the case upon the merits.

The plaintiff contends that as payee of the check the matter of its payment or countermand was in his entire control. The general rule is that as a check is an order for the payment of money, it is in the power of the maker to countermand the order at any time before its acceptance by the drawee. But here the person undertaking to stop the payment was not the maker. It was the payee. No authority has been cited to us which holds that the payee of a check has power to revoke the maker's order. Nor has any case been cited to show that the payee of a check which the payee has endorsed to the order of another, has a right to require the maker to stop its payment.

No helpful analogy can be drawn in such case from the law governing assignments and bailments, as argued by the attorneys for the plaintiff. Assuming without deciding, as we are willing to do for the purposes of this case, that the consideration for the plaintiff's endorsement was an illegal one, and that the fact of illegality would be a good defense against the indorsee in case the maker stopped payment as requested and was thereupon sued by the indorsee, it nevertheless does not follow, that the plaintiff was entitled

as a matter of right to require the maker to countermand the check. When a person purchases a credit from a bank and thereafter endorses the credit for circulation, the bank is under no obligation to invite a lawsuit against itself at the hands of the indorsee in order to protect the payee-endorser from the consequences of what he admits was either his own folly, his ignorance or his negligence.

When the plaintiff purchased the check his contract relations with the defendant changed from that of a depositor to that of a holder of the defendant's negotiable paper. He now claims that it was in his power to compel the defendant to agree that the new contractual relation should be dissolved and the old one of bank and depositor restored. This, in our judgment, it was beyond his power to do.

Whether in a given case a bank which has sold its banker's check to the payee therein shall countermand its payment on the payee's request, is a matter entirely within the bank's uncontrolled discretion. If it chooses to comply with the request, it does so at its own risk and must undergo all the consequences of a possible suit against it brought at the instance of an endorsee. If it does not choose to assume that risk and to undergo its possible consequences, the payee has no right to complain. His only recourse, if his endorsement was procured by fraud or on an illegal consideration, as is here claimed, is against the endorsee if against any one. The bank should not be thrust against its will into the position of a contender with a third party whom it never knew, with whom it had no dealings and for whose presence in the controversy the payee was solely responsible.

The judgment below will be affirmed.