STATE OF PENNSYLVANIA, by and through Paul Silverstein, as Special Deputy Insurance Commissioner, Plaintiff-Appellee,

v.

CURTISS NATIONAL BANK OF MIAMI SPRINGS, FLORIDA, Defendant-Third Party Plaintiff-Appellant-Cross-Appellee,

v.

NATIONAL WESTERN LIFE INSURANCE COMPANY et al., Third Party Defendants-Appellees-Cross-Appellants.

No. 28543.

United States Court of Appeals, Fifth Circuit.

June 4, 1970.

Rehearing Denied July 8, 1970.

Lewis Horwitz, Broad & Cassel, Miami Beach, Fla., Herbert L. Nadeau, Mimi, Fla., for appellant.

Reasbeck, Fegers & Reasbeck, R. Regis Reasbeck, Hollywood, Fla., for State of Pennsylvania.

Shutts & Bowen, Miami, Fla., for National Western Life Ins. Co.

Harvey E. Ford, Hollywood, Fla., for Bruce Cooper.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

## I.

The first part of this appeal deals with an action to recover on a cashier's check issued to a Bruce Cooper as escrow agent for Bankers Allied Mutual Insurance Company (hereafter Bankers Allied) a Pennsylvania corporation, by the Curtiss National Bank of Miami Springs, Florida (hereafter the Bank) brought by the Insurance Department of the State of Pennsylvania as the Statutory Liquidator of Bankers Allied, which has been dissolved under the laws of that state. The Bank advanced the affirmative defenses of failure of consideration; non-performance of conditions precedent allegedly contained in an escrow agreement under which the payee Cooper was to deliver the cashier's check; and that the payee Cooper received the check for a special purpose and was to deliver it for a special purpose, and the special purpose was not accomplished. The District Court found that the provisions alleged to restrict and condition the delivery of the check were not contained in the escrow agreement actually signed by Cooper and that "there was no lack of consideration and that said Cashier's Check was and is a valid instrument past due and unpaid," and entered a judgment against the Bank for $150,000.00, the amount of the cashier's check, plus interest of six per cent per annum from February 27, 1967, the date the Bank refused to pay the check. On appeal, the Bank abandons its conditional delivery defense, but contends that the District Court erred in granting judgment in favor of Pennsylvania on the ground that there was a failure of consideration for the check. We affirm.

An understanding of the underlying financial transactions out of which the issuance of the cashier's check resulted is necessary to place the legal controversy here presented in perspective. Sometime prior to January 10, 1967, a syndicate made up of Fred Investments, Inc., Morris Liebman, The Roberts Company, Inc., and Worthington Sales, Inc. (here-after, the Borrowers) entered into negotiations with Bankers Allied concerning the purchase of the controlling interest it owned in Bankers & Telephone Employees Insurance Company (hereafter Bankers & Telephone) and the eventual rehabilitation of that company. Both Bankers Allied and Bankers & Telephone suffered from a serious impairment of their capital. Bankers & Telephone had ceased writing insurance on October 25, 1966, upon request of the Pennsylvania Insurance Department, while Bankers Allied had been suspended from operation by the Insurance Department on December 29, 1966. As a result of this state of affairs, it was necessary for the Borrowers to obtain the consent of the Insurance Department for the transfer of Bankers & Telephone stock and comply with whatever preconditions the Insurance Department established before Bankers & Telephone could resume normal business operations. The preconditions established by the Insurance Department were basically that the Borrowers: (1) pay $150,00 in cash to Bankers Allied to purchase its Bankers & Telephone stock; (2) make a $1,000,000 contribution to the capital funds of Bankers & Telephone, consisting of $50,000 cash and $950,000 worth of IBM stock; and (3) replace in Bankers & Telephone's investment portfolio $1,400,000 in cash or securities acceptable to the Insurance Department. Pursuant to these conditions 2600 shares of IBM common stock were deposited in a safe deposit box at the Harrisburg National Bank and Trust Company, Harrisburg, Pennsylvania.

On February 1, 1967, the Borrowers issued a collateral note in the amount of $400,000 to the Bank, and on February 3rd the loan was closed. Under the terms of the collateral note and a collateral pledge agreement entered into on the same day, the Borrowers undertook to repay the $400,000 loan in twenty quarterly installments with interest at 8 per cent per annum and represented that the IBM stock would be placed in the assets of Bankers & Telephone and not be sold, transferred or encumbered

in any way, and that Bankers & Telephone would maintain its capital structure in such a way to protect the Bank. The loan was secured by a pledge of 501,000 shares of Bankers & Telephone stock, a first ship mortgage, an assignment of proceeds from an override commission agreement, a security interest in certain equipment and a fidelity bond issued by Bankers & Telephone.

The proceeds of the loan were credited to an escrow account with the Bank, the law firm of Street and Greenfield being named escrow agent for the Borrowers. Street and Greenfield, in turn, drew a check on this account in the amount of $150,000 payable to Bruce Cooper as escrow agent for Bankers Allied, which was used to purchase the cashier's check here in question. Upon receipt of the cashier's check, Cooper, acting under his authority as attorney in fact for Bankers Allied, delivered a total of 586,759 shares of Bankers & Telephone stock, the receipt of which the Bank acknowledged in writing. Cooper delivered the cashier's check to Bankers Allied on February 8, 1967, and on the same day Bankers Allied was dissolved by the Insurance Department. On or about February 23rd, the cashier's check was presented by the Insurance Department through regular banking channels to the Bank, but was returned for a guarantee of endorsement. On February 24th, the Insurance Department discovered that the IBM stock which had been added to Bankers & Telephone's capital was stolen. On February 27th, this information was communicated to the Bank, and Bankers & Telephone was suspended by the Insurance Department. The Bank immediately called its loan and, apparently upon instructions of Street and Greenfield, stopped payment on the cashier's check.

At this point there was a series of letters from Leo Greenfield of Street and Greenfield, written in behalf of the Bank and directed to Bruce Cooper and the Insurance Department, offering to return the pledged Bankers & Telephone stock in exchange for the cashier's check

pursuant to the Bank's version of Cooper's escrow agreement, which the District Court found to be erroneous. The Insurance Department refused to return the check and insisted upon its payment.

The Bank contends that the consideration given for the cashier's check was the Bankers & Telephone stock *along with the IBM stock*, so that when the stolen nature of the IBM stock was discovered, there was a failure of consideration for the cashier's check. In making this contention, the Bank seeks to place itself in the shoes of its Borrowers. Moreover, it seriously misapprehends both its right under the various contracts arising out of the overall purchase-rehabilitation scheme and the true nature of a cashier's check.

The simple answer to the Bank's contention is that the consideration for the cashier's check was the payment of $150,000 by a check drawn on the Borrowers' escrow account by Street and Greenfield, their escrow agents, and the resulting transfer of that amount to the Bank's cashier check account, with which the cashier's check was purchased, and not the Bankers & Telephone stock together with the IBM stock as contended by the Bank. See Wright v. Trust Company of Georgia, 108 Ga.App. 783, 134 S.E.2d 457 (1963); Tarrant Wholesale Drug Co., v. Kendall, Tex.Civ.App.1949, 223 S.W.2d 964, 966–967; Mine & Smelter Supply Co. v. Stock Growers' Bank, 8 Cir., 1912, 200 F. 245.

██ A cashier's check is defined as a bill of exchange drawn by a bank upon itself and accepted in advance by the act of its issuance and not subject to countermand by either its purchaser or the issuing bank. Ross v. Peck Iron & Metal Company, 4 Cir., 1959, 264 F.2d 262, 269; Polotsky v. Artisans Savings Bank, 7 W.W.Harr. 151, 37 Del. 151, 188 A. 63, 107 A.L.R. 1458, 1460 (1936); Causey v. Eiland, 175 Ark. 929, 1 S.W.2d 1008, 56 A.L.R. 529, 532 (1928); Drinkall v. Movius State Bank, 11 N.D. 10, 88 N.W. 724 (1901). See Riverside Bank v. Maxa, Fla.1950, 45 So.2d 678; Bank of Bay Biscayne v. Ball, 99 Fla. 745, 128

So. 491 (1930). As such, the Bank's liability on the check is governed by the Uniform Commercial Code, which was adopted in Florida in 1965, effective January 1, 1967. *See* Florida Statutes, Chs. 671–680. Under the Code, the Bank's issuance of the check, which by definition is also acceptance, constituted an engagement by the Bank to honor the check as presented, (*see* U.C.C. § 3–410, Florida Statute § 673.3–410) extinguishing the right of the Bank or anyone else to countermand the check. *See* U.S.C. § § 4–403, Florida Statute § 674.4–403, and Comment thereto, A.L.I., Uniform Commercial Code, 1962 Official Text. Assuming *arguendo* that Bankers Allied was not a holder in due course,[1] the Bank is entitled to defend on the ground of lack or failure of consideration. *See* U.C.C. §§ 3–306 and 3–408, Florida Statutes §§ 673.3–306 and 673.3–408. But, as was noted at the outset, the check drawn by Street and Greenfield upon the escrow account and the transfer of funds resulting therefrom constituted an adequate consideration for the issuance of the cashier's check.·

■ Moreover, the Bank's contentions lack merit because of a failure to distinguish between the separate contracts involved in the overall purchase-rehabilitation scheme. The first distinct agreement to become part of the scheme was the financing arrangement whereby the Bank agreed to advance the necessary capital to the Borrowers in return for a promise to repay, secured by various pledges, security interests and representations, the most important of which was that $950,000 worth of IBM stock would be added to the capital of Bankers & Telephone. There can be no doubt that

the discovery of the stolen nature of the IBM stock destroyed the value of the pledged Bankers & Telephone stock for the Bank, forcing it to, at best, call the loan and move against its Borrowers to cover its loss. It is equally clear, however, that Bankers Allied was not in any way a party to this agreement and thus cannot be required to return the $150,-000, represented by the cashier's check, because of the failure of consideration contemplated ·by the agreement. See Bruce Const. Corporation v. Federal Realty Corp., 104 Fla. 93, 139 So. 209 (1932); American Surety Co. of New York v. Smith, 100 Fla. 1012, 130 So. 440 (1930); Weimar v. Yacht Club Point Estates, Inc., Fla.Dist.Ct.App., 1969, 223 So.2d 100, 103.

The agreement between the Borrowers and Bankers Allied whereby Bankers Allied agreed to sell its Bankers & Telephone stock to the Borrowers for $150,-000 was another, distinct and separate contract. The Bank was in no way a party to this agreement and thus cannot do what it apparently is attempting to do here and assert whatever colorable right the Borrowers might have to seek what amounts to a rescission of the stock purchase from Bankers Allied. See Bruce Const. Corporation v. Federal Realty Corp., supra; American Surety Co. of New York v. Smith, supra; Weimar v. Yacht Club Point Estates, Inc., supra.

■■ The third separate contract involved here rests on the cashier's check, whereby the Bank undertook to pay Bankers Allied $150,000 upon the payment of $150,000 to the Bank by the Borrower's escrow agent. The Bank attempts to join its obligation under the check to the other agreements to which

---

1. A holder in due course takes the instrument free from the defense of want of consideration, U.C.C. § 3–305, Florida Statute § 673.3–305, and a payee, such as Bankers Allied, may be a holder in due course, U.C.C. § 3–302(2), Florida Statute § 673.3–302(2), if he otherwise satisfies the requirements of U.C.C. 3–302, Florida Statute § 673.3–302. The Insurance Department did not claim the status of holder in due course in behalf of Bank-

ers Allied in its pleadings and the District Court made no finding in this regard, although the Insurance Department now contends that Bankers Allied took the cashier's check as a holder in due course. We do not rest our determination on this ground as it would require a remand of this case to the District Court to determine whether Bankers Allied indeed met the factual requirements of a holder in due course.

either the Bank or Bankers Allied were not privy and this it clearly cannot do. The cashier's check, purchased for adequate consideration, unlike an ordinary check, stands on its own foundation as an independent, unconditional and primary obligation of the Bank. See Riverside Bank v. Maxa, supra.

■ The Bank, whether through its own negligence or through a fraud practiced upon it by the Borrowers, has made an improvident loan. A legal recourse is to seek a judgment against the Borrowers and assert its rights in the collateral securing the loan; it has no right to recover the proceeds of the loan from persons who ultimately received them as a result of executed contracts with the Borrowers.

## II.

In the second portion of this appeal, we are asked to review an order of the District Court granting a motion for summary judgment brought by the Bank as a third-party plaintiff against the National Western Life Insurance Company (hereafter National Western) a third-party defendant, for $140,971.31. We again affirm.

On February 3, 1967, the Bank sold National Western a $337,000 participation in its $400,000 loan to the Borrowers. Under the terms of the Certificate of Participation evidencing the agreement between the Bank and National Western, the Bank agreed to "promptly credit to the account of National Western * * * [its] pro rata share of all payments of principal and interest on the * * * loan" and National Western agreed to "pay the Bank on demand its pro rata share of any expenses or liability incurred by the Bank in connection with the loan and * * * permit the Bank to repurchase said participation at par and accrued interest if the Bank deems it necessary or desirable". When the Bank stopped payment on the cashier's check, it immediately credited National Western's account in the amount of $150,000. By its third-party com-

plaint, the Bank demanded judgment against National Western for all sums that might be adjudged against the Bank in favor of Pennsylvania.

The District Court found that there was no genuine issue as to any material fact entitling the Bank to a judgment against National Western and specifically that there was no genuine issue that National Western participated in the loan to the extent of $337,000 and that National Western was credited by the Bank with $150,000 when the cashier's check was stopped by the Bank. On this basis, the District Court held as a matter of law that the Bank was entitled to a summary judgment for a sum equal to the proportion National Western's participation in the loan bears to the judgment entered against it in favor of the Pennsylvania Department of Insurance, and that since National Western's participation in the loan equalled 337/400 of $400,000, its share of the loss would be 337/400 of $167,325.00 or $140,971.31, and entered a judgment for that amount.

The appellant National Western contends that entry of summary judgment was error for two reasons: *First*, that there were genuine issues of material fact so that the case was not a proper one to be disposed of on summary judgment; and, *Second*, that is could not be held liable for the interest assessed in the judgment against the Bank in the main cause because it was in no way responsible for the stopping of the cashier's check. The Bank responds by contending that there is no genuine issue of material fact and that it was entitled to summary judgment as a matter of law either under the terms of the participation certificate or on a theory of unjust enrichment.

■ Summary judgment is to be granted only if the evidence before the District Court shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law", Rule 56(c), Federal Rules of Civil Procedure. The burden is on the moving party to establish that there is no genuine issue

of fact and the party opposing the motion should be given the benefit of every reasonable inference that can be made from the evidence in his favor. Time, Inc. v. McLaney, 5 Cir., 406 F.2d 565, 572, cert. den. 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239; Liberty Leasing Co. v. Hillsum Sales Corporation, 5 Cir., 1967, 380 F.2d 1013, 1014.

In order to be entitled to recover on the agreement contained in the Participation Certificate, the Bank had the burden of establishing: (1) an expense or liability incurred by the Bank in connection with the loan; (2) National Western's failure to pay the Bank its pro rata share of the expense or liability. See Roy L. Willard, Inc. v. Miller, 150 Fla. 458, 8 So.2d 489 (1942); Cerniglia v. Davison Chemical Company, Fla. Dist.Ct.App., 1962, 145 So.2d 254, 255. The pleadings, affidavits and evidence produced at trial of the main cause between the Bank and the Pennsylvania Insurance Department clearly establish that there is no genuine issue of material fact that National Western had entered into an agreement with the Bank as evidenced by the Participation Certificate although all the details of National Western's participation may not have been completely worked out, and that the Bank, by having the judgment entered against it on the cashier's check, incurred liability in connection with the loan. Further, where a contractual promise to pay money is in terms performable on demand by the promisee, but the duty of performance is otherwise unconditional, as is the case here, a right of action by the promisee is not conditional on a demand being made. Texas Water Supply Corp. v. Reconstruction Finance Corp., 5 Cir., 1953, 204 F.2d 190, 193; Restatement, Contracts, § 264. The District Court was therefore correct in concluding that there was no genuine issue as to any material fact necessary to entitle the Bank to recover from National Western as a matter of law. In light of this, it is not necessary to reach the unjust enrichment argument advanced by the Bank.

National Western also contends that it is error for the District Court to include the interest assessed against the Bank in the main judgment in its judgment against National Western for its pro rata share of the Bank's liability on the cashier's check, arguing that since it was not involved in the Bank's wrongful dishonor of the cashier's check, it cannot be charged with any part of the interest assessed against the Bank. See Riverside Bank v. Maxa, *supra*, 45 So. 2d at 680, (which indicates that a bank which wrongfully refuses to honor its own cashier's check is chargeable with interest from the date of its refusal). There is no merit in this contention for the reason that National Western's liability is predicated on its contractual undertaking to share pro rata any expense or liability incurred by the Bank in connection with the loan, which would clearly include an assessment for interest, and not on any participation in the Bank's refusal to pay the check.

The judgment of the District Court against the Bank in favor of the Pennsylvania Insurance Department and the judgment against National Western in favor of the Bank are hereby

Affirmed.