FRANCIS A. DZIURAK, Respondent, v CHASE MANHATTAN BANK, N. A., Appellant.

Second Department, June 20, 1977

*Milbank, Tweed, Hadley & McCloy (Andrew J. Connick* and *Richard C. Tufaro* of counsel), for appellant.

*Samuel W. Sherman* and *Irving A. Cook* for respondent.

*Sullivan & Cromwell (Richard G. Powell, H. Rodgin Cohen* and *John B. Tehan* of counsel), for New York Clearing House Association, *amicus curiae.*

COHALAN, J. P. The sole question on this appeal is whether a bank depositor to whom an "official bank check" has been issued (and by him indorsed to the order of a third party), can legally stop payment thereon, in the absence of a court order or an indemnification bond. An official bank check is com-

monly referred to as a "cashier's check". Trial Term held it could be stopped. We disagree.

A recitation of the facts is necessary to place the problem in proper focus.

The plaintiff currently holds a judgment against the defendant Chase Manhattan Bank (Bank) in the amount of $17,000, plus interest and costs.

During the year 1973 Dziurak maintained a savings account with Branch No. 40 of the Bank in the sum of $18,000. He was cozened by an acquaintance named Staveris into a proposal whereby, for $22,000 cash, he could acquire a one-third interest in a corporation whose sole asset was a going restaurant. There was nothing in writing to bind the bargain. Dziurak paid Staveris $5,000 down. He then went to the Bank and, through the assistant manager, arranged for the proper withdrawal. He asked for a "check" to be drawn to the order of Staveris. Monaco, the assistant manager, advised him to have the check drawn to himself as payee. A further bit of advice by Monaco was for Dziurak to go to his attorney, who would instruct him how to indorse the check.

The $17,000 was transferred to the Bank's coffers and Dziurak's savings account was debited accordingly. A cashier's check was then issued to the order of "Francis A. Dziurak".

Plaintiff ignored the suggestion that he consult with his attorney. Instead he wrote on the back of the instrument "Francis Dziurak. Pay to order Mario Staveris" and delivered the item to Staveris. The latter, instead of depositing the check into the corporate restaurant account, deposited it in his own savings account.

Before he learned of Staveris' perfidy and before the cashier's check had cleared, Dziurak belatedly sought the advice of a local attorney. Very properly, the attorney advised him to try to stop payment on the cashier's check.

Back went Dziurak to the Bank. He saw Monaco and asked him if the check had cleared. It had not, but had arrived at the Bank that morning.

While plaintiff was with him, Monaco telephoned the Bank's attorneys and was advised that the check could not be stopped, absent a court order. He so advised the plaintiff and while Dziurak was still with him he telephoned the plaintiff's attorney to advise him to the same effect. The attorney said

he was aware that a court order could effectively produce a stop of the payment.

This action was started against the Bank after judgment was first taken against Staveris, and after execution was returned unsatisfied.

As to the law, the controlling statutes are contained in several sections of the Uniform Commercial Code which, in turn, are fleshed out in reported decisions of nisi prius and appellate courts.

We begin with subdivision (1) of section 4-403 of the Uniform Commerical Code ("Customer's Right to Stop Payment; Burden of Proof of Loss"): "A customer may by order to his bank stop payment of *any item payable for his account* but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the Bank with respect to the item described in Section 4-303" (emphasis supplied).

As to this section (4-403) we part company with Trial Term, which held that the $17,000 represented by the cashier's check was actually Dziurak's money and not that of the Bank. As noted in *Wertz v Richardson Hgts. Bank & Trust* (495 SW 2d 572, 574 [Tex]): "A cashier's check is not one payable for the customer's account, but rather for the bank's account. It is the bank which is obligated on the check".

The reference in section 4-403 more properly fits the situation where the depositor, as drawer, issues his own check on his own bank, as drawee. Such a check can be stopped if reasonable notice is given.

"A cashier's check is of a very different character. It is the primary obligation of the bank which issues it [citation omitted] and constitutes its written promise to pay upon demand [citation omitted]. It has been said that a cashier's check is a bill of exchange drawn by a bank upon itself, accepted in advance by the very act of issuance" *(Matter of Bank of United States [O'Neill],* 243 App Div 287, 291).

This exposition of the law has been follwed consistently. (See *Garden Check Cashing Serv. v First Nat. City Bank,* 25 AD2d 137; *Rose Check Cashing Serv. v Chemical Bank N. Y. Trust Co.,* 43 Misc 2d 679; *Tinker Nat. Bank v Grassi,* 57 Misc 2d 886, 889; *Garden Check Cashing Serv. v Chase Manhattan Bank,* 46 Misc 2d 163, 165; *Moon Over the Mountain v Marine Midland Bank,* 87 Misc 2d 918.)

No decisions holding to the contrary have been unearthed.

But to go on. Subdivision (1) of section 4-303 of the Uniform Commercial Code ("When Items Subject to * * * Stop-Order") states, in part:

"Any * * * stop-order received by * * * a payor bank, whether or not effective under other rules of law to terminate * * * the bank's right or duty to pay an item * * * comes too late to so terminate * * * if the * * * stop-order * * * is received * * * and a reasonable time for the bank to act thereon expires * * * after the bank has done any one of the following:

"(a) accepted or certified the item".

The next section to consider is 3-410 ("Definition and Operation of Acceptance"):

"(1) Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification."

At this point we can refer back to annotation 5 in the Official Comment under section 4-403 of the Uniform Commercial Code (McKinney's Cons Laws of NY, Book 62½, Part 2, p 611): "There is no right to stop payment after certification of a check or other acceptance of a draft, and this is true no matter who procures the certification. See Sections 3-411 and 4-303. The acceptance is the drawee's own engagement to pay, and he is not required to impair his credit by refusing payment for the convenience of the drawer."

Thus, the Bank's one signature on the instrument constitutes both a drawing and an acceptance and makes the Bank a drawer and a drawee (see *Matter of Bank of United States [O'Neill]*, 243 App Div 287, *supra*).

In the recitation of the facts, mention was made that the local attorney for the plaintiff remarked to Monaco that he was aware that a court order (presumably one of a court of competent jurisdiction) could have acted as a "stop payment" order. The statute providing for such an order is section 3-603 of the Uniform Commercial Code. It is headnoted "Payment or Satisfaction" and, pertinently, reads: "(1) The liability of any party is discharged to the extent of his payment * * * to the holder even though it is made with knowledge of a claim of another person to the instrument unless prior to such payment * * * *the person making the claim either supplies*

*indemnity deemed adequate by the party seeking the discharge* or enjoins payment or satisfaction by order of a court of competent jurisdiction in an action in which the adverse claimant and the holder are parties" (emphasis supplied).

The fact that the attorney for the plaintiff was aware that a court order could effect a stop payment presupposes that he also knew he could file an indemnity bond to protect the Bank, since both options are included in subdivision (1) of section 3-603 of the Uniform Commercial Code.

Viewed in retrospect, the Bank, as a practical matter, could quite safely have stopped payment on its cashier's check and, by interpleader, have paid the money into court. Staveris could not have established himself as a holder in due course (see Uniform Commercial Code, § 3-302). But, if the Legislature laid upon a bank the onus of questioning the reason for the issuance of all cashier's checks it would destroy the efficacy of such instruments, which, for all practical purposes, are treated as the equivalent of cash *(Goshen Nat. Bank v State of New York,* 141 NY 379, 387).

To do justice to the Bank, it is only fair to observe that the entire brouhaha was occasioned by the intransigence of Dziurak. Had he followed the advice of Monaco to consult his own attorney, the situation in which the parties are now involved would have been averted. It was well said in *National Safe Deposit Co. v Hibbs* (229 US 391, 394, wherein the doctrine of equitable estoppel was invoked for dismissing the complaint) and cited with approval in *Bunge Corp. v Manufacturers Hanover Trust Co.* (31 NY2d 223, 228): "That where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." Dziurak provoked the issue; Dziurak should shoulder the blame.

There is a profusion of cases to the effect that a cashier's check, once issued and in the possession of a third party, cannot legally be stopped except as provided by statute (see Uniform Commercial Code, § 3-603). One of the leading cases of recent vintage is *Kaufman v Chase Manhattan Bank, Nat. Assn.* (370 F Supp 276).

There, in an opinion by Chief Judge EDELSTEIN, plaintiff Kaufman was granted summary judgment. In that case the bank, at the request of a depositor, drew a cashier's check to plaintiff as payee. When it was presented for payment the bank refused to honor it. Chief Judge EDELSTEIN wrote that (p

278): "A cashier's check * * * is a check drawn by the bank on itself, payable to another person, and issued by an authorized officer of the bank. The bank, therefore, becomes both the drawer and the drawee; and the check becomes a promise by the bank to draw the amount of the check from its own resources and to pay the check upon demand. Thus, the issuance of the cashier's check constitutes an acceptance by the issuing bank; and the cashier's check becomes the primary obligation of the bank."

A reference to subdivision (1) of section 3-410 of the Uniform Commercial Code was contained in a footnote to the opinion with respect to acceptance upon issuance.

Contrary to Trial Term's opinion, the statute makes no distinction between a cashier's check presented for payment by a payee or one presented by an indorsee of the payee. (See *Moon Over the Mountain v Marine Midland Bank,* 87 Misc 2d 918, *supra,* and the cases therein cited.) It engages to pay on demand to the person who presents the check unless he falls within either of the categories listed in subdivision (1) of section 3-603 of the Uniform Commercial Code (theft or restrictive indorsement).

From all that has been stated, and harsh as it may appear, it follows that the judgment must be reversed and the complaint dismissed, with costs.

Whether future remedies are available to persons situated as is the plaintiff at bar must be left to the discretion of the State Legislature.

HAWKINS, SUOZZI and MOLLEN, JJ., concur.

Judgment of the Supreme court, Kings County, entered September 24, 1976, reversed, on the law, with costs to appellant payable by respondent, and complaint dismissed.