I. Jack **SOCHACZEWSKI** and Lenore F. **Sochaczewski**, his wife, Plaintiffs,

v.

**WILMINGTON SAVINGS FUND SOCIETY, a corporation of the State of Delaware, Defendant.**

Superior Court of Delaware, New Castle County.
Submitted: Feb. 27, 1986.
Decided: March 27, 1986.

Charles Snyderman, Wilmington, for plaintiffs.

William H. Sudell, Jr. and Kenneth J. Nachbar of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant.

TAYLOR, Judge.

Plaintiffs seek to recover for losses resulting from defendant having paid a cashier's check issued by defendant at plaintiffs' request after defendant had been requested by plaintiffs to stop payment on the check.

The Second Amended Complaint [complaint] alleges: On February 27, 1979, plaintiff obtained a cashier's check from defendant in the amount of $7,237.30 payable to Fleet and Lease Service Co., Inc. from which plaintiffs were purchasing a car. After plaintiffs mailed the check to the payee they were informed that the payee was no longer doing business. I. Jack Sochaczewski [plaintiff] instructed an employee of defendant to stop payment on the check and filled out a stop payment order supplied by defendant. Three days later defendant's same employee informed plaintiff that the stop payment order was in effect. The following day plaintiff was given the same assurance and defendant deposited the amount of the cashier's check in plaintiff's savings account. On the same day defendant paid the cashier's check. One month later plaintiffs obtained another cashier's check from defendant payable to another automobile dealer, this time in the amount of $7,442.30, which plaintiffs withdrew from the savings account. Shortly thereafter defendant attempted to process the stop payment order. Some time thereafter plaintiffs were informed that defendant had frozen all of plaintiffs' accounts.

The second amended complaint asserts six counts. Defendant has moved to dismiss Counts I, II, III and VI of the complaint. Count I alleges wrongful payment

of the "cashier's check over the stop payment order". Count II alleges that defendant was negligent in not putting the stop payment order in effect. Count III alleges that defendant "was negligent in advising plaintiffs that the stop payment order was in effect". Count VI alleges that defendant "willfully and wrongfully dishonored ... checks drawn by plaintiffs ... after the date of the 'freeze' ...".

## I

Defendant contends that a bank customer has no legal right to order payment of cashier's check to be stopped.

The first consideration is whether the issuing bank has the power to stop or refuse payment on its cashier's check. On this issue defendant's reasoning is that in the case of a cashier's check the issuing bank is both the drawer and drawee, that as such it had a contractual obligation to the payee and also to the holder of the check, and that a stop payment order entered after issuance of a cashier's check cannot be effective because a stop payment order cannot become effective after a check has been accepted by the drawee bank and in the case of a cashier's check which is drawn by the bank for payment by that same bank the bank's act of issuing the cashier's check constitutes its acceptance of the check for payment.

The Uniform Commercial Code, which was adopted by Delaware in 6 *Del.C.* Subtitle I[1], does not specifically refer to cashier's checks. However, the Delaware Supreme Court recognized in *Wilmington Trust Company v. Delaware Auto Sales,* Del.Supr., 271 A.2d 41 (1970) that that Code, where pertinent, may be applicable to cashier checks. Decisions from other states also have applied UCC provisions in resolving issues involving cashier checks. *Brady on Bank Checks* (5th Ed.) § 1.11, pp. 1–16 to 1–18.

In considering the issues raised by this case it is necessary to recognize distinctions between depositor's checks and cashier's checks. As used herein a depositor's check is an order by the drawer directed to a bank other than the drawer to make payment to a designated party. Cf. *Brady on Bank Checks* § 1.7, p. 1–10; 6 *Del.C.* § 3–104. A cashier's check is a draft drawn by the issuing bank upon itself and not drawn on another bank. *Brady,* supra, § 1.11, pp. 1–16, 1–17. It has been characterized as a promissory note of the issuing bank; *ibid; Banco Ganadero y Agricola, S.A. v. Society Nat. Bank,* D.C. Ohio, 418 F.Supp. 520 (1976); *Taylor v. Equitable Trust Co.,* Md.App., 269 Md. 149, 304 A.2d 838 (1973); and as an unconditional promise by the issuing bank to pay; *Fulton Nat. Bank v. Delco Corp.,* Ga.App., 128 Ga.App. 16, 195 S.E.2d 455 (1973).

The principles discussed in the preceding paragraph were considered by the Delaware Supreme Court in *Polotsky v. Artisans Sav. Bank,* Del.Supr., 188 A. 63 (1936).[2] The Court characterized the cashier's check as a "primary obligation on the part of the [issuing] bank" and stated "there can be no right of countermand by it [the bank] such as exists where the document constitutes a mere direction or order to pay." (at page 66). After noting the above distinction, the *Polotsky* Court held that the bank which issued a check upon its own account in another bank could countermand payment on that check but that such action was discretionary with the issuing bank. The holding

---

**1.** The section numbering of the Delaware statute corresponds to the numbering in the Uniform Commercial Code and the wording of sections of the Delaware statute referred to herein is the same as the corresponding sections of the Uniform Commercial Code.

**2.** It should be noted that the check which was involved in *Polotsky* was a check drawn by Artisans Savings Bank on its own account in

Wilmington Trust Company and constituted a "depositor's check" as that is defined in the preceding paragraph. However, in its discussion the *Polotsky* Court referred to that check as a "banker's check". Its discussion compares a "banker's check" (herein called a customer's check) with a "cashier's check" as that is defined above in this opinion.

in *Polotsky* did not require the determination of a bank's rights and liabilities with respect to its cashier's check. However, that Court's comparative analysis distinguishing between rights and liabilities of a bank arising under a cashier's check from those arising under a customer's check merits consideration together with pertinent authorities from other jurisdictions.

The conditions under which stop payment may be effected are specified in 6 *Del.C.* § 4–303. That section provides that a stop payment order "comes too late" after the payor bank "accepted or certified the item". Under this provision, there cannot be a valid stop payment after the payor bank has accepted the check. It has been held that in the case of a cashier's check, the check is accepted by the payor bank when issued since the bank which issues the cashier's check is both the drawer of the check and the payor bank. *State of Pennsylvania v. Curtiss Nat. Bank,* 5th Cir., 427 F.2d 395 (1970); *Foreman v. Martin,* Ill.App., 6 Ill.App.3d 599, 286 N.E.2d 80 (1972); *National Newark & Essex Bank v. Giordano,* N.J.Super., 111 N.J.Super. 347, 268 A.2d 327 (1970); *Dziurak v. Chase Manhattan Bank,* App.Div., 58 A.D.2d 103, 396 N.Y.S.2d 414 (1977), *aff'd* 44 N.Y.2d 776, 406 N.Y.S.2d 30, 377 N.E.2d 474 (1978); *Kaufman v. Chase Manhattan Bank,* D.C.N.Y., 370 F.Supp. 276 (1973); *Banco Ganadero y Agricola, S.A. v. Society Nat. Bank,* supra. § 4–303 relieves the payor bank from duty to honor a stop payment order if the bank's knowledge, notice or receipt of a stop-order occurs after the payor bank has accepted the check. Applying this concept, it has been held that payment of a cashier's check which has been delivered to the payee cannot be stopped. Ibid.

A more acceptable and less mechanistic approach to this problem starts from the premise that a cashier's check is a promissory note or draft of the issuing bank. 5 *Anderson on the Uniform Commercial Code* § 3–104:32, § 3–410:11; *Brady on Bank Checks* § 1.11, pp. 1–16, 1–17;

*Polotsky v. Artisans Savings Bank,* supra; *State v. Tyler Co. Bank,* Tex.Com.App., 277 S.W. 625 (1925); *Ross v. Peck Iron & Metal Co.,* 4th Cir., 264 F.2d 262 (1959); *Banco Ganadero y Agricola, S.A. v. Society Nat. Bank,* supra; *Taylor v. Equitable Trust Co.,* supra. It was an unconditional promise by the issuing bank to pay the specified amount to the payee. *Fulton Nat. Bank v. Delco Corp.,* supra. The bank which issues a cashier's check is liable as the maker of the instrument. 6 *Del.C.* § 3–413; 5 *Anderson,* supra, § 3–410:11; *Rezapolvi v. First Nat. Bank,* Md.App., 296 Md. 1, 459 A.2d 183 (1983); *Laurel Bank & Trust Co. v. City Nat. Bank,* Conn.Supr., 33 Conn.Sup. 641, 365 A.2d 1222 (1976). Hence the relationship of the bank in the case of a customer's check differs substantially from that in the case of a cashier's check, and therefore the availability of stop payment to be exercised by the bank's customer differs. In the case of a customer's check, the function of the bank on which the check is drawn is to pay the check out of funds of the drawer held by the payor bank. The bank's function in such case is merely to comply with the customer's directions in holding or paying the drawer's funds. 7 *Anderson,* supra, § 4–403:3; *Uniform Commercial Code,* White & Summers, § 17–5; *Polotsky v. Artisans Savings Bank,* supra. Accordingly, up to the time when the payor bank accepts or pays the check or the bank has certified the check (6 *Del.C.* § 4–403; § 4–303) the drawer may stop payment of the check. *Ibid.* The bank against which the customer's check is drawn incurs no liability by honoring a stop payment order timely received from the drawer of the check. 7 *Anderson,* supra, § 4–403:3, § 4–403:6. In contrast to a customer's check, a cashier's check is a direct obligation of the bank. Hence, payment of a cashier's check by the issuing bank is not contingent upon the availability of funds on deposit in the customer's account or subject to termination of the customer's authorization to withdraw funds from the customer's account.

The bank which issues a cashier's check is the obligor and its obligation runs to the payee or subsequent holder of the cashier's check. Therefore, the issuing bank exposes itself to possible liability if it refuses to pay its cashier's check. *Brady,* supra, § 20.12. Moreover, the law is not clear that the issuing bank can assert defenses which are available to the customer who caused the cashier's check to be issued. Ibid; *White & Summers,* supra, § 17.5, pp. 680–3. I conclude that the bank which issues a cashier's check does not have the protection which surrounds a payor bank which honors a timely stop payment order involving a customer's check and that if it refuses to honor its cashier's check it subjects itself as the maker of an instrument who fails to make payment. Accordingly, the determination of whether to refuse to make payment rests with the issuing bank.

Various cases have held that the customer who causes a bank to issue a cashier's check has no right to stop payment on a cashier's check. *Dziurak v. Chase Manhattan Bank, N.A.,* N.Y.App., 44 N.Y.2d 776, 406 N.Y.S.2d 30, 377 N.E.2d 474 (1978); *Wertz v. Richardson Heights Bank and Trust,* Tex.Supr., 495 S.W.2d 572 (1973); *Wood v. Central Bank of The South,* Ala.Civ.App., 435 So.2d 1287 (1982); *National Newark & Essex Bank v. Giordano,* N.J.Super., 111 N.J.Super. 347, 268 A.2d 327 (1970); *Santos v. First National State Bank of New Jersey,* N.J.Super., 186 N.J.Super. 52, 451 A.2d 401 (1982). *Polotsky v. Artisans Sav. Bank,* supra, accepted that proposition in distinguishing between a cashier's check and a bank's check drawn on its account in another bank. Based on the foregoing considerations I conclude that plaintiff had no right to require defendant to refuse or stop payment of its cashier's check unless defendant agreed to take that action.

**II**

Plaintiff has placed before the Court two documents which purport to set forth defendant's policy and procedure with respect to stopping payment of WSFS "official checks".[3] The document titled "Policy" which applies to a WSFS "official check or money order" states:

1. A Stop Payment Order on a WSFS official check or money order can be initiated upon a customer's request, *only* when the check has been lost by, stolen from, or destroyed while in the possession of the customer.

2. If the check or money order was payable to someone other than the customer, we will require a statement in writing from the customer that the check or money order had been mailed to, or otherwise delivered to the payee, and a written statement from the payee that the check or money order has not been received, before we will place a stop payment order against the check or money order.

3. In the event that delivery of the check or money order has been made to the payee and then lost, stolen or destroyed, we will require a written statement from the payee giving the circumstances surrounding such loss, theft, or destruction, before we will place a stop payment order against the check or money order.

The Court will assume that reference to "official check" covers cashier's checks issued by WSFS. The above quoted provisions confine the stop payment procedure to instances (1) where the official check has been lost by the customer, or stolen from the customer or destroyed while in the possession of the customer, (2) where the check is payable to someone other than the customer, the check has been mailed to the payee and the payee supplies a statement that the payee has not received the check, or (3) where the check is payable to some-

---

**3.** Although these are not supported by affidavit, defendant does not object to the consideration of these documents under Superior Court Civil Rule 12(b).

one other than the customer and the check has been delivered to the payee and the payee supplies a statement that check has been lost, stolen or destroyed. The policy specifies requirements which apply if, as here, the official check is payable to someone other than the customer.

■ I conclude that the WSFS policy described above constituted an undertaking by WSFS to activate stop payment of an official check under the limited circumstances and upon compliance with the requirements set forth therein.

The complaint alleges that the cashier's check was payable to Fleet & Lease Service Co., Inc. and that plaintiff mailed the cashier's check to the payee. Under the WSFS policy described above, plaintiffs were required to satisfy the requirement for a written statement from the payee, either that it had not received the check or that after receipt of the check it had been lost, stolen or destroyed, as a condition for WSFS to stop payment. Plaintiffs do not contend that this condition has been met.

Counts I and II relate directly to failure of defendant to stop payment of the cashier's check. Based on the foregoing considerations, summary judgment is granted in defendant's favor as to Counts I and II.

The other Counts involve both legal and factual issues which have not been dealt with sufficiently to permit disposition on motion to dismiss, bearing in mind that such motion should not be granted unless it appears that under no set of facts which could be proved would plaintiff be entitled to relief. *Klein v. Sunbeam Corp.*, Del. Supr., 47 Del. (8 Terry) 526, 94 A.2d 385 (1952). No evidentiary material has been submitted as to those Counts and hence summary judgment is inappropriate.

Based on the foregoing, summary judgment is granted in favor of defendant as to Counts I and II, and it is denied as to all other Counts.

IT IS SO ORDERED.